740 A.2d 615

**Jamore Van JOHNSON**

v.

**STATE of Maryland.**

**No. 135, Sept. Term, 1998.**

Court of Appeals of Maryland.

Nov. 15, 1999.

Claudia A. Cortese, Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Annabelle L. Lisic, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for respondent.

**500**

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW *, RAKER, WILNER and CATHELL, JJ.

RAKER, Judge.

Jamore Van Johnson appeals from his conviction in the Circuit Court for Anne Arundel County for the offenses of possession of a controlled dangerous substance with intent to distribute and simple possession. The sole issue he raises before this Court is the trial court's denial of his motion to suppress evidence seized pursuant to a search incident to his arrest for trespass on public housing property in violation of Maryland Code (1957, 1996 Repl.Vol.) Article 27, § 577(a)(2) [1]. Johnson contends that the police did not have probable cause to believe that he was trespassing because the notification that he received in 1995 to stay off the property was stale in 1997; thus, the arresting officer, knowing the date of the notification, could not reasonably have believed that Johnson was committing a crime. The Court of Special Appeals found no merit in his argument and affirmed the judgments. We agree, and shall affirm.

At the time of this offense [2], § 577 stated in pertinent part:

(a) In general.—(1) Any person who remains upon, enters upon or crosses over the land, premises, or private property ... of any person or persons in this State after having been

---

* Chasanow, J., now retired, participated in the hearing and conference of this case while an active member of the Court but did not participate in the decision and adoption of this opinion.

1. Unless otherwise indicated, all subsequent statutory references shall be to Maryland Code (1957, 1996 Repl.Vol.) Art. 27, § 577.

2. Section 577, effective at the time of the arrest, has been repealed and a new § 577 enacted, effective October 1, 1998. *See* 1998 Maryland Laws ch. 498, at 2361. The current version of § 577 includes those offenses previously found in former §§ 576, 577, 578, 579A, 579B and 580 of Article 27. The changes are not substantive but rather stylistic only.

duly notified by the owner or his agent not to do so is considered guilty of a misdemeanor, and upon conviction is subject to a fine not exceeding $500, or imprisonment not exceeding 3 months, or both.

(2) The provisions of paragraph (1) of this subsection shall apply to property used as a housing project and operated by a housing authority . . . if a duly authorized agent of the housing authority . . . gives the required notification specified in paragraph (1) of this subsection.

(3) This section may not be construed to include within its provisions the entry upon or crossing over any land when such entry or crossing is done under a bona fide claim of right or ownership of said land, it being the intention of this section only to prohibit any wanton trespass upon the private land of others.

Petitioner was found guilty in the Circuit Court for Anne Arundel County, in a bench trial upon an agreed statement of facts, of the offenses of possession of a controlled dangerous substance with intent to distribute, namely heroin, and possession of a controlled dangerous substance, namely, cocaine. The court sentenced him on each count to a term of incarceration of three years, to run concurrently.

Officer John Miller of the Annapolis Police Department was the only witness to testify at the suppression hearing. The evidence presented at the hearing is as follows. Shortly after midnight in the early morning hours of May 7, 1997, Officer Miller was patrolling the public housing community in Annapolis known as Annapolis Gardens. He testified that the area is a posted no trespass area and that these signs are affixed upon light posts throughout the community. Officer Miller explained that "the community oriented policing squad has been given the authority by Annapolis Housing Authority to issue banning notices to individuals that they feel have no proper reason for being in these communities."[3] In accor-

---

**3.** The agreement between the Housing Authority authorizing the police to act as its agent is not included in the record nor is the content of the banning notice.

dance with this authority, the police department maintained a trespass banning list. Officer Miller testified that when his check reveals that a person is on the banning list, the person is arrested.

Officer Miller testified that he noticed Petitioner driving on Bowman Drive, a street within the Annapolis Gardens community, recognized him, and recalled his name. He radioed the police dispatcher and requested a check for outstanding warrants and driver's license status. The dispatcher advised the officer that Petitioner had a valid driver's license and that there were no outstanding warrants for his arrest. Officer Miller then requested the dispatcher to check Petitioner's name against a "binder or folder ... of names of people that have been banned from different Housing Authority properties throughout the City of Annapolis." The dispatcher advised the officer that Petitioner's name was listed "as being issued by Officer Berger on 5/5/95 as not to return to the property of Bowman Court/Annapolis Gardens" and that he had been "banned" from the property in 1995. Upon learning that Petitioner was banned from the property, the officer stopped Petitioner's car and arrested him for trespass. The officer searched the car and seized the drugs in question concealed within the vehicle, as well as $84.00 and a beeper.

Petitioner filed a timely motion to suppress the evidence by the police on the grounds that his arrest was unlawful because the police officer lacked probable cause to support the arrest. Petitioner argued that the search incident to that arrest was unlawful and the items seized by the police were inadmissible.

The trial court denied Johnson's motion to suppress. The State entered a *nolle prosequi* to the trespass charge and Petitioner proceeded to trial on an agreed statement of facts. Following his conviction and sentence, he noted a timely appeal to the Court of Special Appeals. In an unreported opinion, the court affirmed. We granted the petition for writ of certiorari.

Petitioner presents a single argument before this Court— that the officer lacked probable cause for the arrest because

he knew that the notification was two-years old and thus could not have reasonably believed that Petitioner was duly notified not to enter upon the property. He maintains that notification proper in 1995 was stale in 1997; that Officer Miller, knowing the date of the notification, could not reasonably have believed that it was not stale and thus could not have believed that Petitioner was trespassing.

Petitioner's premise is that a critical element of the crime of trespass after warning is that the person's presence on the property be after he or she was "duly notified" not to trespass. Before this Court, Petitioner does not dispute that Officer Miller knew that Petitioner had entered the property. Nor does Petitioner dispute that Officer Miller knew that Petitioner was notified earlier—on May 5, 1995—by another officer not to enter the property. Rather, he argues that this notification was not "due" notification on May 7, 1997, and that no reasonable officer could have believed that the notification given on May 5, 1995 was adequate notice under the statute. Without suggesting any guidelines, he maintains that the notice not to enter must be reasonably contemporaneous.

Petitioner relies on dictionary definitions of the word "duly" to support his argument that the word has a connotation of timeliness.[4] Citing the *American Heritage Dictionary* (2d ed.1992), defining "duly" as "in a proper manner; in the expected time," and *Webster's New World Dictionary* (2d College ed.1978), defining "duly" as "in due manner," "when due; at the right time; on time," he concludes that only "reasonably contemporaneous" notification would be due notification and that a reasonable police officer would not think otherwise. Officer Miller knew that the notification was two-years old, and therefore, according to this argument, could

---

**4.** We note that Petitioner does not include the *Black's Law Dictionary* definition of the word "duly." See BLACK'S LAW DICTIONARY 501 (6th ed. 1990): "In due or proper form or manner; according to legal requirements. Regularly; properly; suitable; upon a proper foundation, as distinguished from mere form; according to law in both form and substance." This definition shows that the word does not necessarily have a timeliness connotation, especially in legal contexts.

only have reasonably believed that the due notification element was negated; the possibility that a trespass had been committed in his presence was therefore negated as well. Consequently, he could not have had probable cause for the arrest.

Our review of the trial court's denial of a motion to suppress under the Fourth Amendment is based solely upon the record of the suppression hearing. *See Ferris v. State,* 355 Md. 356, 735 A.2d 491 (1999). The arrest in this case was a warrantless arrest, based upon on a misdemeanor having been committed in the presence of the police officer.[5] The legality of a warrantless arrest is determined by the existence of probable cause at the time of the arrest. *See Collins v. State,* 322 Md. 675, 679, 589 A.2d 479, 481 (1991). "The rule of probable cause is a non-technical conception of a reasonable ground for belief of guilt, requiring less evidence for such belief than would justify conviction but more evidence than that which would arouse a mere suspicion." *Doering v. State,* 313 Md. 384, 403, 545 A.2d 1281, 1290 (1988). Probable cause exists where the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information would justify the belief of a reasonable person that a crime has been or is being committed. *See Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Collins,* 322 Md. at 680, 589 A.2d at 481. We have recognized that in dealing with probable cause, we deal with probabilities. "These are not technical; they are the factual and practical

---

**5.** Section 594B of Article 27 sets out Maryland law governing warrantless arrests, and provides in pertinent part:

(a) *Arrest for crime committed in presence of officer.*—A police officer may arrest without warrant any person who commits, or attempts to commit, any felony or misdemeanor in the presence of, or within the view of, such officer.

(b) *Arrest for crime apparently committed in presence of officer.*—A police officer who has probable cause to believe that a felony or misdemeanor is being committed in the officer's presence or within the officer's view, may arrest without a warrant any person whom the officer may reasonably believe to have committed such offense.

Maryland Code (1957, 1996 Repl.Vol., 1999 Supp.) Art. 27, § 594B.

considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Doering*, 313 Md. at 403, 545 A.2d at 1290 (quoting *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)).

 Before the Court of Special Appeals, Petitioner presented two arguments. First, that there was no evidence that Johnson was ever on Annapolis Gardens property, and second, that the notification not to enter the property was not timely; it was not due; rather it was clearly stale. As to the first argument, the court held that because the argument was not made at the hearing on the motion to suppress, it was waived.[6] As to the second argument, Retired Chief Judge Robert C. Murphy, writing for the court, found that "there was no reason whatsoever to believe that the trespassing prohibition against [Johnson] had somehow expired or that [Johnson's] name had otherwise been removed from the list. There is

---

**6.** At the motions hearing in the circuit court, Petitioner argued that the officer lacked grounds to believe that Petitioner entered on or remained upon the Annapolis Gardens property. He also argued that the officer "didn't even investigate, he just arrested." Before the Court of Special Appeals, Johnson suggested that because Officer Miller testified only that he saw him driving on Bowman Drive, a public street, and there was no evidence that the officer ever saw him within the Annapolis Gardens community, his presence on the street could not be considered a trespass. The Court of Special Appeals held that because this argument was not made at the motions hearing, it was not properly before the court and hence, would not be considered. We likewise will not consider the issue. In addition, because Petitioner does not challenge the authority of the Annapolis City police to act as the agent of the Housing Authority or the authority of the police to immediately arrest rather than stop and investigate further, *see Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to determine whether Petitioner had a bona fide claim of right or ownership, we will not address either issue. *See, e.g., State v. McCormack*, 517 So.2d 73, 75 (Fla.App.1987) (finding that officer had reason to stop and inquire purpose for being on property, and when defendant failed to offer explanation for his presence, officer had probable cause to arrest); *State v. Little*, 116 Wash.2d 488, 806 P.2d 749, 754 (1991) (holding that "officers had reasonable suspicion to believe that a criminal trespass was being committed and properly attempted to conduct an investigatory stop"); *State v. Blair*, 65 Wash.App. 64, 827 P.2d 356, 359 (1992) (noting that officer's prior admonishment not to return, coupled with Blair's return, authorized officer to stop Blair and investigate to see if his presence was in fact legitimate).

simply no suggestion that the information that the dispatcher gave to Officer Miller was stale." The court also noted that the statute expressly permits a housing authority to notify a person not to enter upon housing project property, and that the statute contains no time limitation on such bans. We agree with the Court of Special Appeals.

The plain language of the statute does not create expressly any time limitation upon the notification requirement. Examination of the statutory scheme of criminal trespass as a whole, moreover, shows that while the General Assembly intended to create a requirement of contemporaneous notification for criminal trespass on certain types of property, it did not intend to do so for private property or public housing projects. Our review of the legislative history of the provision on public housing projects, added by amendment in 1994, reinforces this conclusion.

Under the common law, trespass to real property is not a crime unless it amounts to a breach of the peace. Thus, for the most part, criminal trespass is a creature of statute. It is only the notification element of the statute that concerns us in this case.

■ We begin our discussion by pointing out that Maryland's statutory scheme for criminal trespass divides property into two categories: private property, including public housing projects on the one hand, and public buildings and grounds on the other. The section pertaining to private property and public housing projects, recited above, provides that one may not "enter[ ] . . . after having been duly notified . . . not to do so." Section 577(a)(1). The section criminalizing trespass on public buildings and grounds provides as follows:

(1) During regularly closed hours.—Any person refusing or failing to leave a public building or grounds, or specific portion thereof, of a public agency or public institution during those hours of the day or night when the building, grounds, or specific portion thereof, is regularly closed to the public, upon being requested to do so by a regularly employed guard, watchman or other authorized employee of

the public agency or institution owning, operating or maintaining the building or property if the surrounding circumstances are such as to indicate to a reasonable man that such person has no apparent lawful business to pursue at such place, shall be guilty of a misdemeanor. . . .

(2) During regular business hours.—Any person refusing or failing to leave a public building or grounds, or specific portion thereof, of a public agency or public institution during regular business hours, upon being requested to do so by an authorized employee of the public agency or institution owning, operating or maintaining the building or property if the surrounding circumstances are such as to indicate to a reasonable man that such person has no apparent lawful business to pursue at such place, or is acting in a manner disruptive of and disturbing to the conduct of normal business by such agency or institution, shall be guilty of a misdemeanor. . . .

Maryland Code (1957, 1996 Repl.Vol.) Art. 27, § 577A.[7] The statute on public buildings and grounds thus criminalizes *remaining* in a public building or on public grounds, *upon being requested* to leave. This contrasts with the prohibition on entering after being notified not to do so, in the section on private property and public housing projects. Interpreting the difference between the two sections, we have explained that

[a]lthough the statute makes "refusing or failing to leave a public building or grounds . . . upon being requested to do so by . . . [an] authorized employee" a criminal offense, there is no provision whereby mere *entrance* into a public building, following a prior notification, amounts to a criminal trespass under § 577A. Unlike owners of posted property who can forbid *entry* by posting, or owners of non-posted private property who can forbid *entry* by notifying specific

---

7. Section 577A, effective at the time of the arrest, has been moved to § 578, with stylistic changes in language, effective October 1, 1998. *See* 1998 Maryland Laws ch. 498, at 2361. The changes are not substantive and are stylistic only.

persons in advance that they may not have access to their property, public officials under § 577A can only notify people, in specified circumstances, that they may not *remain.* *In re Appeal No. 631,* 282 Md. 223, 227, 383 A.2d 684, 686 (1978). Thus, under Maryland's regime for trespass on public buildings and grounds, a notification to stay off property given on one occasion does not remain effective for future occasions. Under the Maryland regime for trespass on private property and public housing project property, by contrast, a notification to stay off property given on one occasion remains effective for future occasions.[8] This means that contemporaneous notification is required in the former case and not in the latter. Our examination of the statutory scheme for criminal trespass as a whole thus leads us to the conclusion that due notification under § 577, covering private property and public housing projects, need not be contemporaneous.

■ The history of the General Assembly's recent decision to include public housing projects in § 577 reinforces our conclusion that notification to trespassers on public housing property need not be contemporaneous with the act of trespassing. House Bill 200 was introduced in the 1994 session to make § 577 apply specifically to public housing projects operated by a housing authority or other State public body, if an authorized agent of the housing authority or other State public body gives the required notice. *See* Senate Judicial Proceedings Committee, Bill Analysis on House Bill 200 (1994). The bill's sponsor, Delegate Joel Chasnoff, noted in the Bill Analysis and in the Floor Report that because some District Court judges had ruled that public housing was covered under § 577A, trespass on public buildings and grounds, legislation was necessary specifically to include trespass on public housing premises in § 577. He noted:

Advocates of the bill argue that § 577A is inappropriate for public housing because the only way that a public official

---

**8.** We need not decide whether notification to stay off a property is valid for an indeterminate period of time. We decide only, under the circumstances presented herein, that two years is not unreasonable.

may give the required notice is by requesting an individual who is found already on the property to leave. *Posted notices that warn people to keep out are insufficient.* As the Court of Appeals stated in *In re Appeal No. 631,* 282 Md. 223, 227 [383 A.2d 684] (1978): "Unlike owners of posted property who can forbid *entry* by posting or owners of non-posted private property who can forbid *entry* by notifying specific persons in advance that they may not have access to their property, public officials under § 577A can only notify people, in specified circumstances, that they may not *remain.*"

Senate Judicial Proceedings Committee, Floor Report on House Bill 200 (1994). The stated purpose of the bill was "to help public housing authorities to keep drug dealers and other undesirable persons away from public housing projects." *Id.* Accordingly, subsection (2) was added to § 577. *See* 1994 Maryland Laws ch. 231, at 1661.

Two points are apparent from this history. First, the General Assembly understands the difference between requiring and not requiring contemporaneous notice. It understood in 1994 that it had chosen previously to require contemporaneous notice for trespassing on public buildings and grounds and not for trespassing on private property. Thus it is no accident that this requirement is present in § 577A and absent in § 577. Second, the General Assembly deliberately placed trespassing on public housing project property in § 577. It thereby put public housing in the same category as private property, specifically in response to a perceived need for durable notices to keep undesirable persons away from such housing.

One notable feature of Maryland's criminal trespass scheme that emerges from our analysis is that the scheme reflects the General Assembly's view that public housing projects warrant the greater degree of protection from trespassing afforded to private property, not the lesser degree afforded to public buildings and grounds. This view is in keeping with the "policy of this State to develop safe, sanitary and decent housing for the citizens of this State," as declared in Article

44A, the Housing Authorities Law. *See* Maryland Code (1957, 1998 Repl.Vol., 1999 Supp.) Art. 44A, § 1–102(8) and §§ 10–101 to 10–102 The General Assembly has declared that there is a shortage of safe and sanitary dwellings in the State available at rents which persons of low or moderate income can afford. To this end, housing authorities were created to develop and operate housing projects. *See* Maryland Code (1957, 1998 Repl.Vol., 1999 Supp.) Art. 44 A, § 1–203. Housing authorities, in fulfilling their legislative mandate to provide safe and sanitary housing for low and moderate income people, act in the same manner as the management of privately-owned apartment complexes would act, and do not operate the premises as public buildings or as public agencies. Housing authorities may legitimately exclude those persons on the property for the purpose of engaging in illegal activities. *See State v. Blair,* 65 Wash.App. 64, 827 P.2d 356, 358 (1992).

There is some suggestion by Petitioner that an appropriate time limit could be something later than contemporaneous but sooner than the two years in this case, i.e., the one year statute of limitations. We decline to usurp the role of the legislature and create such a limit.

In sum, we conclude that § 577 does not require any more contemporaneous notification than was provided here. We hold that it was reasonable for the officer to believe that Petitioner had due notice not to enter upon the property. The property was posted with signs indicating that trespassing is not permitted. The no trespass message on the posted sign was "contemporaneous notice" and would warn a reasonable person not to enter if his or her presence was unauthorized, or, as in this case, that he had been banned from the property. The officer saw the signs. The officer had reliable information that Petitioner had been informed by an Annapolis City police officer that he was on the trespass list and banned from the property. The officer had knowledge that Officer Berger told Petitioner on May 5, 1995, to stay off the property and personally saw Petitioner on the property. Officers on the street are not there to interpret or construe statutes micro-

scopically or to make decisions in a hyper-technical fashion. The officer could reasonably conclude that Petitioner was duly notified not to remain upon, enter or cross over the property of the housing authority.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONER TO PAY COSTS.*