985 A.2d 175

**Michael Anthony STOKELING**

v.

**STATE of Maryland.**

No. 1126, Sept. Term, 2008.

Court of Special Appeals of Maryland.

Dec. 30, 2009.

654

656

Brian L. Zavin (Nancy S. Forster, Public Defender, on brief), for Appellant.

Carrie J. Williams (Douglas F. Gansler, Atty. Gen., on brief), for Appellee.

Panel: EYLER, DEBORAH S., GRAEFF, and ALPERT, PAUL E. (Retired, Specially Assigned), JJ.

EYLER, DEBORAH S., J.

In the Circuit Court for Harford County, Michael Anthony Stokeling, the appellant, was charged with possession of marijuana. Before trial, he moved to suppress the marijuana from evidence as having been obtained in violation of his Fourth Amendment rights. The suppression motion was denied.

The parties proceeded with a not guilty plea on an agreed statement of facts. The appellant was convicted of possession of marijuana. He was sentenced to two years in prison, with all but one year and one day suspended, to be followed by three years' probation. He also was fined $1,000, with all but $350 suspended.

In this appeal, the appellant asks whether the circuit court erred in denying his motion to suppress. We answer in the negative, and therefore shall affirm the judgment.

## FACTS AND PROCEEDINGS

The following facts were adduced at the suppression hearing.

On August 26, 2007, at about 11:20 p.m., Officer Michael Webster, of the Aberdeen Police Department, was on patrol in a marked cruiser near Route 22 and Middleton Lane, when he saw the driver of a blue four-door Chrysler make a turn without using a turn signal. He called the Chrysler's license plate in to the dispatcher and learned that the Chrysler's owner, Danielle Durazzo, had had her driver's license suspended. At that point, Officer Webster pulled the Chrysler over

for a traffic stop near a 7–Eleven store at 739 West Bel Air Avenue.

The Chrysler had three occupants. Officer Webster approached the car and asked them to identify themselves. Durazzo (the owner) was driving. The appellant was the front seat passenger. A female passenger was sitting in the back-seat.[1]

Officer Webster noticed that Durazzo and the appellant were "very nervous," and that the appellant was "shaking" and experiencing "rapid breathing." The officer called for a K–9 unit. Within a minute or two, Officer Todd Fanning and his certified K–9 partner, Gunny, arrived on the scene.[2] At Officer Fanning's command, Gunny scanned the vehicle. (The appellant and the other occupants were still inside.) Gunny alerted at the rear driver's side door, and then at the front passenger's side door.

Officer Fanning did not have Gunny scan the occupants of the Chrysler individually because that would not have been safe to do. As he explained, "We're not allowed to do that. Being that the dog is an aggressive alert dog, the way he would alert if he were to find something on the subject, he would scratch or bite at that location, and that wouldn't be good." After the scan of the Chrysler, but before the occupants were removed from the vehicle, Gunny was returned to Officer Fanning's patrol car.

Officer Fanning removed the appellant from the Chrysler and "patted him down for weapons. . . ." As he did so, he noticed that the appellant "was shaking quite a lot[.]" The officer asked him "why he was so nervous, why he was shaking." In response, the appellant said "it was cold out." Actually, the outside temperature was between 75 and 80 degrees.

---

1. That passenger's identity is not reflected in the record.

2. Gunny was certified to detect marijuana, powder cocaine, crack cocaine, heroin, methamphetamine, and ecstasy.

When performing a weapons frisk, Officer Fanning typically pats down "on the outside ... down both legs ... the shirt, arms, around the neck area, the waistband, and the crotch area." During this pat-down, Officer Fanning "noticed that there was something large" that felt to him "like a bag of something in [the appellant's] crotch area." Officer Fanning had some difficulty patting the appellant down in that area because the appellant "wouldn't spread his legs completely apart." Officer Fanning did not attempt to remove the bag at that time because, as he put it, "I wasn't positive and I'm not going to stick my hands down somebody's pants in front of the 7–Eleven unless I strongly believe it's a weapon or a gun, but I knew it not to be a gun or a knife." No weapons were found in the pat-down.

After telling Officer Webster about feeling the bag in the appellant's crotch area, Officer Fanning "sat [the appellant] down on the curb till Officer Webster was done with the rest of his traffic stop." The female occupants were removed from the Chrysler and patted down. No weapons were recovered from them. They also were seated on the curb.

When the pat-downs were finished, Officer Webster and Officer Fanning each performed a complete search of the Chrysler. Officer Webster found nothing. Officer Fanning "observed marijuana residue in the middle console of the vehicle and the driver's side where you put—like the opening for maps, the map compartment in the driver's side door."

Thereafter, the appellant was handcuffed, placed in the backseat of Officer Webster's patrol car, and transported to the Aberdeen Police Department for a strip search. During the drive to the station house, he remained "[q]uiet and nervous," "withdrawn," and "tight." After Officer Webster and the appellant arrived in the booking area of the police station, but before the search began, the appellant announced that he had "weed" in his crotch area and that that probably was a violation of his parole. He then "reached down in the front of his pants and pulled out a clear baggie of suspected marijuana." (No strip search was performed.)

The court denied the suppression motion. It found that the traffic stop was valid and the K–9 unit responded immediately, without any delay. (The appellant does not contest either finding.) It concluded that the alert by the K–9 to the Chrysler gave rise to probable cause to arrest the appellant and search his person; that the search by Officer Fanning revealed a baggie of something at the appellant's crotch area; and that, under *Paulino v. State,* 399 Md. 341, 924 A.2d 308, *cert. denied,* 552 U.S. 1071, 128 S.Ct. 709, 169 L.Ed.2d 571 (2007), the officers were justified in taking the appellant to the police station to complete the search, given that it would involve removing his pants.

As noted, the parties proceeded on a not guilty plea with an agreed statement of facts. After the appellant waived his right to a jury trial, the parties agreed to incorporate the facts and rulings before the motion court for purposes of preserving the record for appellate review. The facts read into the record at the not guilty plea hearing were substantially the same as those adduced at the suppression hearing, with the addition that the substance the appellant removed from his pants at the police station was tested and found to be 15.5 grams of marijuana.

## DISCUSSION

The sole issue on appeal is whether the motion court should have suppressed from evidence the marijuana in the baggie that was on the appellant's person. The appellant contends that, because he merely was a non-owner passenger in the Chrysler, the K–9 alert to the Chrysler, in and of itself, did not give rise to probable cause to believe he was involved in criminal activity, so as to justify an arrest and a search incident thereto. At most, he argues, the alert gave the police reasonable, articulable suspicion to detain the occupants of the Chrysler; it did not give them reasonable, articulable suspicion of criminal activity that would justify an investigatory frisk for weapons. *See Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Moreover, he maintains, if a *Terry* frisk were permissible, no additional search or seizure

would have been justified based upon Officer Fanning's findings during the frisk because the incriminating nature of the item in the crotch area of his pants was not immediately apparent.

The State responds that the K–9 alert to the Chrysler generated probable cause to believe that any or all of the car's occupants were in possession of illegal drugs and therefore to arrest them and search them incident to arrest. Alternatively, the K–9 alert generated reasonable, articulable suspicion of criminal activity on the part of all the occupants of the Chrysler, sufficient to justify a *Terry* frisk for weapons; and when, during the frisk, Officer Fanning felt a large bag of "something" at the appellant's crotch area, that, together with the discovery of marijuana residue in the Chrysler, created probable cause to believe the appellant was in possession of illegal drugs, and to arrest him and search him incident to the arrest.

In reviewing the denial of a motion to suppress evidence, we look exclusively to the record of the suppression hearing. *Bost v. State,* 406 Md. 341, 349, 958 A.2d 356 (2008); *Longshore v. State,* 399 Md. 486, 498, 924 A.2d 1129 (2007). We extend great deference to the fact-finding of the suppression hearing judge with respect to determining the credibilities of contradicting witnesses and to weighing and determining first-level facts. *Longshore,* 399 Md. at 498, 924 A.2d 1129; *accord Bost,* 406 Md. at 349, 958 A.2d 356. When conflicting evidence was presented, we must accept the facts as found by the hearing judge unless those findings are shown to be clearly erroneous. *Longshore,* 399 Md. at 498, 924 A.2d 1129; *see also Haley v. State,* 398 Md. 106, 131, 919 A.2d 1200 (2007) ("We review the findings of fact for clear error and do not engage in *de novo* fact-finding."). Furthermore, when the motion to suppress is denied, the evidence is to be reviewed in the light most favorable to the State. *Bost,* 406 Md. at 349, 958 A.2d 356; *State v. Williams,* 401 Md. 676, 678, 934 A.2d 38 (2007); *Longshore,* 399 Md. at 498, 924 A.2d 1129. Nevertheless, as to the ultimate, conclusory fact, we must make our

own independent, constitutional appraisal by reviewing the law and applying it to the facts. *Bost,* 406 Md. at 349, 958 A.2d 356; *Williams,* 401 Md. at 678, 934 A.2d 38; *Longshore,* 399 Md. at 499, 924 A.2d 1129.

For the following reasons, we conclude that when the police handcuffed the appellant and transported him to the station house, and before he turned over the baggie of marijuana that was in his crotch area, there was probable cause to arrest him for possession of marijuana and to search him incident to the arrest.

### Probable Cause to Search the Chrysler

The Court of Appeals has explained the concept of probable cause as follows:

> The legality of a warrantless arrest is determined by the existence of probable cause at the time of the arrest. *See Collins v. State,* 322 Md. 675, 679, 589 A.2d 479, 481 (1991). "The rule of probable cause is a non-technical conception of a reasonable ground for belief of guilt, requiring less evidence for such belief than would justify conviction but more evidence than that which would arouse a mere suspicion." *Doering v. State,* 313 Md. 384, 403, 545 A.2d 1281, 1290 (1988). Probable cause exists where the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information would justify the belief of a reasonable person that a crime has been or is being committed. *See Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Collins,* 322 Md. at 680, 589 A.2d at 481. We have recognized that in dealing with probable cause, we deal with probabilities. "These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Doering,* 313 Md. at 403, 545 A.2d at 1290 (quoting *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)).

*Johnson v. State,* 356 Md. 498, 504–05, 740 A.2d 615 (1999).

 A probable cause assessment "deals with probabilities and depends on the totality of the circumstances." *Mary-*

*land v. Pringle,* 540 U.S. 366, 371, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003).

> To determine whether an officer had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide "whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to" probable cause.

*Id.* at 371, 124 S.Ct. 795 (quoting *Ornelas v. United States,* 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)). In *Pringle,* the Court held that a police officer had probable cause to arrest a front seat passenger in a vehicle stopped for a traffic violation when cocaine was found behind the backseat armrest and over $700 of rolled-up cash was found in the glove compartment. That holding reversed the Court of Appeals ruling that there was no probable cause to arrest the passenger.

Since *Pringle* was decided, the Court of Appeals has observed the following about probable cause:

> To determine whether probable cause exists, we consider the totality of the circumstances, in light of the facts found to be credible by the trial judge, factoring in the variables of the information leading to police action, the environment, the police purpose, and the suspect's conduct. Probable cause exists where the facts and circumstances within the knowledge of the officer at the time of the arrest, or of which the officer has reasonably trustworthy information, are sufficient to warrant a prudent person in believing that the suspect had committed or was committing a criminal offense.

*Haley, supra,* 398 Md. at 132–33, 919 A.2d 1200 (citations omitted). *Accord Williams v. State,* 188 Md.App. 78, 92, 981 A.2d 46 (2009).

■ It is well established that an alert to a vehicle by a qualified drug-sniffing dog furnishes probable cause to perform a warrantless search of the vehicle. *See State v. Wallace,* 372 Md. 137, 146, 812 A.2d 291 (2002) ("[T]he law is settled that when a properly trained canine alerts to a vehicle

indicating the likelihood of contraband, sufficient probable cause exists to conduct a warrantless *'Carroll'* search of the vehicle."), *cert. denied,* 540 U.S. 1140, 124 S.Ct. 1036, 157 L.Ed.2d 951 (2004); *Wilkes v. State,* 364 Md. 554, 586, 774 A.2d 420 (2001) ("[O]nce a drug dog has alerted a trooper 'to the presence of illegal drugs in a vehicle, sufficient probable cause exist[s] to support a warrantless search of [a vehicle].'") (citation omitted) (alterations in original). *See also Carroll v. United States,* 267 U.S. 132, 153, 45 S.Ct. 280, 69 L.Ed. 543 (1925) (holding that "contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant" when probable cause exists); *accord Maryland v. Dyson,* 527 U.S. 465, 466–67, 119 S.Ct. 2013, 144 L.Ed.2d 442 (1999).

Accordingly, Gunny's alert to the Chrysler gave the police probable cause to search it for illegal drugs.

### *Reasonable, Articulable Suspicion to Justify Detention of the Appellant*

When the police do not have probable cause, but have reasonable, articulable suspicion that criminal activity is afoot, they may conduct an investigatory stop; and, if they likewise have reason to believe the suspect is armed, they may perform a frisk for weapons, for officer safety. *Terry v. Ohio,* 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "[M]ost traffic stops ... resemble, in duration and atmosphere, the kind of brief detention authorized in *Terry.*" *Arizona v. Johnson,* — U.S. —, 129 S.Ct. 781, 786, 172 L.Ed.2d 694 (2009) (citation omitted) (internal quotation marks omitted).

In the case at bar, the Chrysler was stopped because the officers had witnessed the driver make a turn without using a turn signal. Thus, there was probable cause to believe that the driver had committed a traffic offense. Once the Chrysler was stopped, the alert by the K–9 generated probable cause to believe that there were narcotics inside the

vehicle and to search it,[3] under *Carroll*.[4] Even without the alert, the police could have required the occupants of the Chrysler to exit during the traffic stop. *See Pennsylvania v. Mimms*, 434 U.S. 106, 110, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (officer may order the driver of a vehicle to exit incident to a lawful traffic stop); and *Maryland v. Wilson*, 519 U.S. 408, 410–11, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997) (extending holding in *Mimms* to passengers). *See also Brendlin v. California*, 551 U.S. 249, 251, 127 S.Ct. 2400, 168 L.Ed.2d 132 (2007) (holding that a passenger is lawfully seized in the course of a traffic stop.)

■ In any event, as the appellant concedes, the police were justified in detaining all three occupants of the Chrysler while the *Carroll* search was performed and in removing them from the vehicle during the search. *See Arizona v. Johnson*, *supra*, 129 S.Ct. at 784, 129 S.Ct. 781 (holding that, "in a traffic-stop setting, the first *Terry* condition—a lawful investigatory stop—is met whenever it is lawful for police to detain an automobile and its occupants pending inquiry into a vehicular violation.").

### *Reasonable, Articulable Suspicion to Justify a Weapons Frisk of the Appellant*

As noted, upon removing the appellant from the Chrysler, Officer Fanning performed a *Terry* frisk for weapons. The Supreme Court has explained that "to proceed from a [*Terry* ] stop to a [*Terry* ] frisk, the police officer must reasonably suspect that the person stopped is armed and dangerous." *Id.* To justify a pat-down of "the driver or a passenger during a traffic stop ... the police must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Id.*

---

**3.** When Durazzo was found to be driving the Chrysler, there also was probable cause to arrest her for driving on a suspended license.

**4.** *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) (announcing a vehicle exception to the warrant requirement).

In our view, Officer Fanning had reasonable suspicion that the appellant was armed and dangerous when he performed the pat-down. The appellant was a passenger in a vehicle to which a drug-sniffing dog had alerted. In *Pringle,* in the context of probable cause, the Supreme Court observed that, when illegal drugs and a large amount of money are found in a vehicle occupied by a driver and a passenger, or passengers, it is reasonable to believe that the occupants are involved in a joint enterprise.[5] And, when a certified K–9 alerts to the presence of narcotics in a vehicle in which there is more than one occupant, "probable cause to search the vehicle is, *ipso facto,* probable cause to arrest at the very least, the driver." *State v. Ofori,* 170 Md.App. 211, 229, 906 A.2d 1089, cert. denied, 396 Md. 13, 912 A.2d 649 (2006).[6] *See also Fitzgerald v. State,* 153 Md.App. 601, 620, 837 A.2d 989 (2003) (recognizing, in a case concerning whether a K–9 alert provided probable cause to search an apartment, that "[t]he

---

**5.** The *Pringle* Court stated:

We think it an entirely reasonable inference from these facts that any or all three of the occupants [of the vehicle] had knowledge of, and exercised dominion and control over, the cocaine [found in the vehicle]. Thus, a reasonable officer could conclude that there was probable cause to believe [the defendant passenger] committed the crime of possession of cocaine, either solely or jointly.

540 U.S. at 372, 124 S.Ct. 795.

**6.** In *Henderson v. State,* 183 Md.App. 86, 960 A.2d 627 (2008), *cert. granted,* 407 Md. 529, 967 A.2d 182 (2009), a case primarily concerned with whether a vehicle passenger was subject to an illegal detention prior to a K–9 scan of the vehicle, we concluded that various factors gave probable cause to arrest both that passenger and the driver:

Here, there was reasonable, articulable suspicion to believe there was illegal activity afoot when Lewis [a passenger] was arrested on an open warrant and a search incident to his arrest uncovered an amount of currency consistent with drug dealing. Therefore, the officers were permitted to pursue further their drug investigation by detaining [Henderson] and [the driver] until the K–9 unit arrived. Moreover, the officers' reasonable, articulable suspicion escalated when, just prior to the K–9 scan, they discovered a knife on the floor of the vehicle. Once the K–9 gave a positive alert, the officers had probable cause to search the vehicle and arrest [Henderson] and [the driver].

*Id.* at 99, 960 A.2d 627 (footnote omitted).

same degree of certainty that will support the warrantless *Carroll* doctrine search of an automobile will, *ipso facto,* support the warrantless arrest of a suspect"), *aff'd,* 384 Md. 484, 864 A.2d 1006 (2004). Likewise, when a certified K–9 alerts to the presence of narcotics in a vehicle in which there is more than one occupant, there is at least reasonable, articulable suspicion to believe that the occupants of the vehicle are engaged in a joint enterprise and together are in possession of narcotics. That conclusion logically follows the Supreme Court's probable cause analysis in *Pringle.*

In addition, we have repeatedly recognized the connection that exists between guns and drugs. *See Hicks v. State,* 189 Md.App. 112, 134, 984 A.2d 246, 259 (2009); *Dashiell v. State,* 143 Md.App. 134, 153, 792 A.2d 1185 (2002) ("Persons associated with the drug business are prone to carrying weapons."), *aff'd,* 374 Md. 85, 821 A.2d 372 (2003); *Whiting v. State,* 125 Md.App. 404, 417, 725 A.2d 623 (1999) ("[W]e have acknowledged a nexus between drug distribution and guns."); *Banks v. State,* 84 Md.App. 582, 591, 581 A.2d 439 (1990) ("Possession and indeed, use, of weapons, most notably, firearms, is commonly associated with the drug culture[.]"). Here, reasonable, articulable suspicion that the appellant was in possession of illegal narcotics in turn raised reasonable, articulable suspicion that he was in possession of a firearm. Also, the officers who carried out the traffic stop and *Carroll* search in the case at bar were experienced in drug enforcement, and "considerable credit can be given to the expertise of law enforcement officers in conducting investigations into illegal drug activity." *Birchead v. State,* 317 Md. 691, 703, 566 A.2d 488 (1989).[7]

Finally, as we have noted, when the appellant was inside the stopped Chrysler, Officer Webster noticed that he was "shaking" and was experiencing "rapid breathing" and that he and

---

**7.** Officer Webster testified that he had been in law enforcement for about eight years, including one year with the Narcotics Task Force. Officer Fanning testified he had three years experience and was assigned to the Rapid Response Team, a division responsible for "targeting the movement of illicit drugs and gangs in Aberdeen."

the driver both were "very nervous." The appellant continued to shake and act nervously after exiting the vehicle and, when asked why by Officer Fanning, gave an answer that made no sense. (He replied that "it was cold out," even though it was a hot summer night.) Although the Court of Appeals has cautioned against using nervousness as a factor in probable cause or reasonable, articulable suspicion analysis, *see Longshore*, 399 Md. at 535, 924 A.2d 1129, nevertheless, in this case, when there was a K–9 alert to the presence of drugs, it is entitled to at least some weight.

For these reasons, Officer Fanning was justified in frisking the appellant for weapons, under *Terry*.

As mentioned earlier, the appellant asserts that, even if the *Terry* frisk for weapons was justified, its execution violated his Fourth Amendment rights because it exceeded the scope of a permissible weapons frisk. The appellant relies upon *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), in advancing this argument. In that case, the police observed the defendant leaving an apartment building they considered to be a "notorious 'crack house.' " *Id.* at 368, 113 S.Ct. 2130. The defendant noticed the police and then abruptly began walking away. The police stopped him to investigate. One officer frisked him for weapons. None were found, but in the course of the frisk the officer felt "a small lump in the respondent's nylon jacket," in the front pocket. *Id.* at 369, 113 S.Ct. 2130. The officer reached into the pocket and removed a small bag, which was found to contain one-fifth of a gram of cocaine.

In defending the ensuing charge of cocaine possession, the defendant moved to suppress the contraband as having been seized in violation of his Fourth Amendment rights. The motion was denied and a conviction followed. The Minnesota Court of Appeals reversed, holding that the cocaine should have been suppressed from evidence. That decision was upheld by the Minnesota Supreme Court. *State v. Dickerson*, 481 N.W.2d 840 (Minn.1992).

The United States Supreme Court granted *certiorari* and agreed that reversal was in order. Relying primarily on *Terry*, the Court recognized a "plain feel" doctrine, as follows:

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

508 U.S. at 375–76, 113 S.Ct. 2130 (footnote omitted). The Court concluded that the pat-down had exceeded the scope of a permissible *Terry* search because the incriminating nature of the object was not immediately apparent to the officer and "the officer determined that the item was contraband only after conducting a further search, one not authorized by *Terry* or by any other exception to the warrant requirement." *Id.* at 379, 113 S.Ct. 2130.

The case at bar is distinguishable from *Dickerson.* The strip search the appellant was taken to the station house to undergo, had it been performed, would not have been a second search based upon the same weapons consideration that justified the *Terry* frisk to begin with. It would have been a search incident to arrest because, by the time it would have been performed, the police had probable cause to believe the appellant was in possession of illegal drugs. Officer Fanning's having felt the presence of a large bag in the appellant's crotch area was one of several factors (including the result of the *Carroll* search) comprising the totality of the circumstances that created probable cause. If Officer Fanning had immediately identified the contents of the bag as illegal drugs, that would have been probable cause to believe the appellant was in possession of illegal drugs, and to justify a search of his person on that basis. That did not happen. By the time a strip search would have been carried out, however, the officers had probable cause to believe the appellant was in possession

of drugs on his body based upon the total facts, including the presence of a bag of "something" in his crotch area.

### *Reasonable, Articulable Suspicion that Illegal Activity is Afoot Ripens into Probable Cause that the Appellant is in Personal Possession of Illegal Drugs*

As mentioned already, we conclude that the information Officer Fanning obtained during the pat-down combined with the information he obtained from the search of the Chrysler generated probable cause to believe that the appellant was in personal possession of narcotics. During the pat-down, the appellant resisted moving his legs apart to accommodate Officer Fanning's frisk for weapons. And, in the course of frisking the appellant's crotch area for weapons, the officer felt a large "bag of something." After the frisk, in the search of the Chrysler, Officer Fanning "observed marijuana residue in the middle console of the vehicle and the driver's side where you put—like the opening for maps, the map compartment in the driver's side door." These facts, together with those we have recounted in considering the *Terry* frisk issue, elevated the stop of the appellant to one supported by probable cause. *See Crosby v. State,* 408 Md. 490, 506, 970 A.2d 894 (2009) ("A *Terry* stop may yield probable cause, allowing the investigating officer to elevate the encounter to an arrest or to conduct a more extensive search of the detained individual"); *see also Rosenberg v. State,* 129 Md.App. 221, 243, 741 A.2d 533 (1999) (concluding that, under the circumstances, reasonable, articulable suspicion may ripen to probable cause), *cert. denied,* 358 Md. 382, 749 A.2d 173 (2000).

Accordingly, we conclude that, considering the totality of the evidence of objective facts known to them at the time, when the police arrested the appellant by handcuffing him and placing him in Officer Webster's patrol car for transportation to the Aberdeen Police Department, they had probable cause to believe he was in possession of illegal drugs.

### *Search Incident to Lawful Arrest*

Once there was probable cause to arrest the appellant for drug possession, the police were justified in searching his

person incident to the arrest. The Supreme Court has restated the law concerning searches incident to arrest as follows:

Among the exceptions to the warrant requirement is a search incident to a lawful arrest. *See Weeks v. United States*, 232 U.S. 383, 392, 34 S.Ct. 341, 58 L.Ed. 652 (1914). The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations. *See United States v. Robinson*, 414 U.S. 218, 230–234, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); [*Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)].

In *Chimel*, we held that a search incident to arrest may only include "the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence." *Ibid.* That limitation, which continues to define the boundaries of the exception, ensures that the scope of a search incident to arrest is commensurate with its purposes of protecting arresting officers and safeguarding any evidence of the offense of arrest that an arrestee might conceal or destroy. *See ibid.* (noting that searches incident to arrest are reasonable *"in order to* remove any weapons [the arrestee] might seek to use" and *"in order to prevent* [the] concealment or destruction" of evidence (emphasis added)). If there is no possibility that an arrestee could reach into the area that law enforcement officers seek to search, both justifications for the search-incident-to-arrest exception are absent and the rule does not apply. *E.g. Preston v. United States*, 376 U.S. 364, 367–368, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964).

*Arizona v. Gant*, —— U.S. ——, 129 S.Ct. 1710, 1716, 173 L.Ed.2d 485 (2009) (alterations in original); *see also Belote v. State*, 411 Md. 104, 981 A.2d 1247, 1252 (2009) (stating purpose of the exception is: "(1) to seize weapons from the arrestee that might be used to effect an escape or to harm law enforcement officers; and (2) to recover evidence that might be destroyed by the arrestee"); *Carter v. State*, 367 Md. 447,

461, 788 A.2d 646 (2002) (" '[I]t is the fact of custodial arrest which gives rise to the authority to search ...' such that the officer need not indicate 'any subjective fear' of the arrestee or suspect that the arrestee was armed.") (quoting *Gustafson v. Florida*, 414 U.S. 260, 266, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973)).

It was fair for Officer Fanning to infer, from the presence of a large bag of something in the appellant's crotch area, which is not an ordinary means people use to carry goods, that the bag contained illegal contraband and that the appellant was attempting to conceal it by keeping his legs together during the pat-down. *See Decker v. State*, 408 Md. 631, 640, 971 A.2d 268 (2009) ("Consciousness of guilt evidence can take various forms, including 'flight after a crime, escape from confinement, use of a false name, and destruction or concealment of evidence.' "). Therefore, one of the recognized purposes for permitting a warrantless search incident to arrest was present in this case.

### Reasonableness of Transporting the Appellant to the Police Station to Perform a Strip Search

Finally, it was not unreasonable for the police to transport the appellant to the police station to carry out the search incident to arrest. In *Holland v. State*, 122 Md.App. 532, 713 A.2d 364, *cert. denied*, 351 Md. 662, 719 A.2d 1262 (1998), several hours after the appellant was lawfully arrested, booked, and detained at the Washington County Detention Center, his belongings were searched and a motel key was found among his possessions. *Id.* at 535–36, 713 A.2d 364. The appellant claimed that this was an unreasonable search, and this Court ruled that it was not, finding *United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974), controlling. We restated the general rule applicable to search incident to arrest and then stated:

> "It is also plain that searches and seizures that could be made on the spot at the time of the arrest may legally be conducted later when the accused arrives at the place of detention."

*Holland,* 122 Md.App. at 537, 713 A.2d 364 (quoting *Edwards,* 415 U.S. at 802–03, 94 S.Ct. 1234 (emphasis in *Holland* )).

Further, we noted that:

"The [federal] courts of appeal have followed this same rule, holding that both the person and the property in his immediate possession may be searched at the station house after the arrest has occurred at another place and if evidence of crime is discovered, it may be seized and admitted in evidence."

*Id.* at 537–38, 713 A.2d 364 (quoting *Edwards,* 415 U.S. at 803–04, 94 S.Ct. 1234) (emphasis omitted).

This Court explained:

When the police, on the street or at the station house, lawfully take an arrestee into custody, the twin exigencies of that custodial situation (concerning possible weapons and possible evidence) justify the warrantless search-incident at its inception. Once the automatic police prerogative of conducting a warrantless search-incident vests, however, it is not necessarily divested just because it is not immediately utilized. The reasonableness clause of the Fourth Amendment does not hold a stop-watch on the police, commanding that as exigency arguably diminishes, the search-incident prerogative proportionately lapses.

*Id.* at 539, 713 A.2d 364.

■ Under these circumstances, it was reasonable to delay the search of the appellant's person incident to arrest until he was taken the short distance to the police station.[8]

### Conclusion

We need not decide whether, in and of itself, the K–9 alert to the Chrysler with the occupants inside constituted probable

---

**8.** We note that the appellant at times refers to his experience at the police station as a "strip search." "A strip search involves a more invasive search of the person as opposed to a routine custodial search." *Paulino v. State, supra,* 399 Md. at 351, 924 A.2d 308. Here, the suppression hearing evidence established that no strip search was performed. The appellant reached in his pants, removed the baggie of marijuana, and turned it over to the police.

cause to arrest the car's occupants, including the passengers, for drug possession.[9] As explained, the K–9 alert gave the officers reasonable, articulable suspicion that illegal drug activity was afoot on the part of the occupants of the Chrysler, and therefore to detain them and perform a frisk for weapons. In addition, the alert gave the officers probable cause to believe that there were illegal drugs inside the Chrysler, and to conduct a *Carroll* doctrine search of that car. The weapons frisk of the appellant disclosed that he had a large baggie in his crotch area. The search of the Chrysler revealed the presence of marijuana residue in the console, next to where the appellant had been seated.

In sum, considering the totality of the circumstances, there was probable cause to arrest the appellant when he was handcuffed and placed in the patrol car; and the police were justified in searching him incident to arrest. That authority included removing him from a public place to a nearby police station to facilitate a strip search. The motion court properly denied the motion to suppress.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY THE APPELLANT.**

---

**9.** In *State v. Wallace*, 372 Md. 137, 159, 812 A.2d 291 (2002), the Court held that a K–9 alert to a vehicle with occupants inside did not give rise to probable cause to believe that Wallace, a passenger who did not own the car, was in possession of illegal drugs. The *Wallace* opinion relied heavily upon the Court's prior opinion in *Pringle v. State*, 370 Md. 525, 805 A.2d 1016 (2002), which, as we have explained, later was reversed. The continued vitality of *Wallace* is questionable given the Supreme Court's ultimate decision in *Pringle*. In any event, it is not necessary in this case to decide whether the alert to the car, by itself, created probable cause to justify a search of the appellant's person.