807 A.2d 780

**Angelo L. TORRES**

v.

**STATE of Maryland.**

**No. 2049, Sept. Term, 2001.**

Court of Special Appeals of Maryland.

Sept. 12, 2002.

Douglas J. Wood, Riverdale, for appellant.

Steven L. Holcomb, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, Baltimore, Douglas Gansler, State's Attorney for Montgomery County, Rockville, on the brief), for appellee.

Argued before MURPHY, C.J., and SALMON, KENNEY, JJ.

SALMON, Judge.

This case causes us to interpret sections 2–202(a) and (b) of the Criminal Procedure Article of the Maryland Code (2001), which is declarative of the common law.[1]  Sections 2–202(a)

---

1.  At the time of appellant's arrest—on November 6, 2000—Article 27, sections 594B(a) and (b) were in effect.  Those sections were replaced

and (b) [2] read:

**Warrantless arrests—In general.**

(a) *Crime committed in presence of police officer.*—A police officer may arrest without a warrant a person who commits or attempts to commit a felony or misdemeanor in the presence or within the view of the police officer.

(b) *Probable cause to believe crime committed in presence of officer.*—A police officer who has probable cause to believe that a felony or misdemeanor is being committed in the presence or within the view of the police officer may arrest without a warrant any person whom the police officer reasonably believes to have committed the crime.

We interpret sections 2–202(a) and (b) as meaning that if (1) a misdemeanor is committed or attempted in a police officer's presence or view or (2) if the officer has probable cause to believe that a misdemeanor is being committed in his presence or view, the officer may make a warrantless arrest only if the arrest is made with reasonable promptness after the offense (or supposed offense) is attempted or committed ("the reasonable promptness rule"). It is important to note, however, that the General Assembly has, by statute, singled out certain misdemeanors for which a police officer may, if certain conditions are met, make a warrantless arrest, even through the misdemeanor (1) has not been committed in the officer's presence or view and (2) where the officer does not have probable cause to believe that a misdemeanor has been committed in his presence or view. *See* §§ 2–203—2–205.[3] The reasonable promptness rule does not

by sections 2–202(a) and (b), effective October 1, 2001. For purposes of this opinion, we have elected to use the most current code sections, which are substantively identical to the earlier ones.

**2.** Unless otherwise specified, all references to code sections refer to the Criminal Procedure Article of the Maryland Annotated Code (2001).

**3.** Section 2–203 reads as follows:

(a) *In general.*—A police officer without a warrant may arrest a person if the police officer has probable cause to believe:

(1) that the person has committed a crime listed in subsection (b) of this section; and

(2) that unless the person is arrested immediately, the person:

(i) may not be apprehended;

(ii) may cause physical injury or property damage to another; or

(iii) may tamper with, dispose of, or destroy evidence.

(b) *Specified crimes.*—The crimes referred to in subsection (a)(1) of this section are:

(1) manslaughter by automobile, motor vehicle, locomotive, engine, car, streetcar, train, vessel, or other vehicle under Article 27, § 388 of the Code;

(2) malicious burning under Article 27, § 8(a) of the Code or an attempt to commit the crime;

(3) malicious mischief under Article 27, § 111 of the Code or an attempt to commit the crime;

(4) a theft crime where the value of the property or services stolen is less than $500 under Article 27, §§ 342 and 342A of the Code or an attempt to commit the crime;

(5) the crime of giving or causing to be given a false alarm of fire under Article 27, § 156 of the Code;

(6) indecent exposure under Article 27, § 335A of the Code;

(7) a crime that relates to controlled dangerous substances under Article 27, §§ 276 through 302 of the Code or an attempt to commit the crime;

(8) the wearing, carrying, or transporting of a handgun under Article 27, § 36B of the Code;

(9) carrying or wearing a concealed weapon under Article 27, § 36 of the Code; and

(10) prostitution and related crimes under Article 27, §§ 426 through 431 of the Code.

It will be noted that some of the crimes listed in 2–203(b) are felonies. For instance, subsection (b)(7) concerns crimes that "relate[ ] to controlled dangerous substances under Article 27, §§ 276 through 302 of the Code or an attempt to commit the crime." Listing of felonies under 2–203(b) was unnecessary because section 2–202(c) provides:

(c) *Probable cause to believe felony committed.*—A police officer without a warrant may arrest a person if the police officer has probable cause to believe that a felony has been committed or attempted and the person has committed or attempted to commit the felony whether or not in the presence or within the view of the police officer.

If certain conditions are met, a police officer may also make a warrantless misdemeanor arrest for domestic abuse and stalking, even though (1) the misdemeanor was not committed in the officer's presence or (2) the officer does not have probable cause to believe that a misdemeanor was committed in his or her presence.

Section 2–204 provides:

**[Warrantless arrests]—For domestic abuse.**

(a) *In general.*—A police officer without a warrant may arrest a person if:

(1) the police officer has probable cause to believe that:

apply to misdemeanor arrests, which come within the ambit of sections 2–203 to 2–205, nor does it apply to felonies.

In the case at hand, the misdemeanor (trespass) allegedly committed in the presence of the arresting officer was trespass—a crime which comes under the general rule. Because appellant was not arrested with reasonable promptness after the officer observed the trespass (or supposed trespass) being committed in his presence, we shall hold that appellant's arrest was illegal. As a consequence, items seized incident to appellant's arrest must be suppressed under the "fruits of the poisonous tree" doctrine. *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

Appellant was arrested without a warrant on November 6, 2000. A search incident to his arrest was conducted by Takoma Park Police Officer Frank Webb. The search revealed

---

(i) the person battered the person's spouse or another person with whom the person resides;

(ii) there is evidence of physical injury; and

(iii) unless the person is arrested immediately, the person:

1. may not be apprehended;

2. may cause physical injury or property damage to another; or

3. may tamper with, dispose of, or destroy evidence; and

(2) a report to the police was made within 48 hours of the alleged incident.

(b) *Self-defense.*—If the police officer has probable cause to believe that mutual battery occurred and arrest is necessary under subsection (a) of this section, the police officer shall consider whether one of the persons acted in self-defense when determining whether to arrest the person whom the police officer believes to be the primary aggressor. Section 2–205 reads:

**Same—For stalking.**

A police officer without a warrant may arrest a person if:

(1) the police officer has probable cause to believe the person has engaged in stalking under Article 27, § 124[B] of the Code;

(2) there is credible evidence other than the statements of the alleged stalking victim to support the probable cause under item (1) of this section; and

(3) the police has reason to believe that the alleged stalking victim or another person is in danger of imminent bodily harm or death.

that appellant was carrying over $1,000 in cash, together with a "rock-like" substance that later testing proved to be cocaine.

Appellant was indicted for possession of cocaine with the intent to distribute. His counsel filed a timely motion to suppress the evidence seized incident to his arrest. The motion was denied after a hearing.

Appellant waived a jury trial, pled not guilty, and proceeded to trial on an agreed statement of facts. Appellant was found guilty and sentenced to eighteen months imprisonment, with all but seven months suspended.

Two questions are raised on appeal:

1. Where appellant was arrested without a warrant for the misdemeanor of trespass, which had been committed in the officer's presence thirteen days earlier, did the timing of the arrest, standing alone, demonstrate its illegality?

2. If the answer to Question No. 1 is in the negative, did probable cause exist for the arrest of appellant for trespass?

## II. THE MAY 18, 2001, SUPPRESSION HEARING [4]

### A. Testimony of Officer Frank Webb

Located in Takoma Park, Montgomery County, Maryland, 125 Lee Avenue is one of approximately seven "low income apartment buildings," which are three or four stories high. Posted in the lobby of 125 Lee Avenue, at all times here pertinent, was a conspicuous blue and white sign, reading "no trespassing or loitering." The sign also notified readers that the police were authorized to act as agents of the owner. The

---

4. We have not set forth the agreed statement of facts because our review "is limited to information contained in the record of the suppression hearing." *Cartnail v. State,* 359 Md. 272, 282, 753 A.2d 519 (2000). In this case, there was no conflicting evidence presented at the suppression hearing. The sole dispute concerns the second level finding of the motions judge, *i.e.,* whether the arrest of appellant was lawful. *See Ornelas v. United States,* 517 U.S. 690, 697, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996).

apartment building located at 125 Lee Avenue address is owned by one Antonio Samos.

On the night of October 24, 2000, Officer Webb, along with two other Takoma Park police officers, received a call from a police dispatcher notifying them that "subjects were smoking and selling CDS" on the parking lot of 125 Lee Avenue. All three officers immediately responded to the Lee Street address. The officers, who were in uniform, parked their vehicles a short distance from the apartment building and proceeded to walk toward the building. As Officer Webb crossed the parking lot, he saw appellant near the rear of 125 Lee Avenue. The officer, who had known appellant for about a year, recognized him immediately. When appellant saw Officer Webb, he put "an unknown object" in his mouth and ran into the rear entrance of 125 Lee Avenue.

As soon as appellant fled, Officer Webb chased after him.[5] When Officer Webb got inside the apartment building, he did not see appellant. Therefore, he and the other officers knocked on several doors and made inquiry about him, but their efforts to locate appellant were unsuccessful.

Officer Webb had previously stopped appellant for an "open-bottle" violation. As a result of that stop, which did not lead to an arrest, he knew that (1) appellant "lived somewhere in the New Hampshire Avenue area" of Takoma Park, (2) appellant's full name was Angelo Louis Torres, and (3) appellant "had been barred by other [Takoma Park] officers ... from several locations on Lee Avenue."

On direct examination, the prosecutor, Officer Webb, and the motions judge had the following exchange:

> Q. [THE PROSECUTOR:] [Y]ou indicated that you chased Mr. Torres. What were you chasing him for?
>
> A. To further investigate why he was, first of all, trespassing, find out what he put in his mouth, you know, what his—

---

5. So far as is shown by the record, neither Officer Webb nor his fellow officers shouted for appellant to halt during appellant's flight.

THE COURT: Let me just clarify some-thing, had you banned him from this area?

THE WITNESS: That—he has been banned by other officers. I don't have anything in writing, but he has been banned from several locations on Lee Avenue.

BY [THE PROSECUTOR]:

Q. Were . . . you aware that he had been banned by several other officers at the time that you chased him?

A. Yes.

Later in Officer Webb's testimony, he admitted that when he chased after appellant he did not know whether appellant had ever been barred from 125 Lee Avenue. Therefore, if he had caught appellant, he "was going to conduct an investigative detention to ascertain whether or not he was barred from" 125 Lee Avenue.

Following the unsuccessful chase, Officer Webb did not seek an arrest warrant, nor did he document in any way his encounter with appellant. Moreover, he made no further inquiry of Mr. Samos (the owner of the premises) or anyone else to determine whether appellant had, in fact, been barred from entering onto the 125 Lee Avenue premises.

On November 6, 2000, which was thirteen days after he had seen appellant at the 125 Lee Avenue address, Officer Webb, while on routine patrol, saw the appellant walking down University Boulevard in the company of a female. The officer did a U-turn and then saw appellant go into a nail salon. The officer followed appellant into the salon and placed him under arrest for trespassing at 125 Lee Avenue on October 24, 2000. That arrest led to the discovery of the money and cocaine, which appellant sought to suppress.

## B. *Testimony of Meryl Wise*

Meryl Wise, at the time of the suppression hearing, had resided at 125 Lee Avenue for approximately five years. He knew appellant well because the latter had formerly dated one of his daughters. According to Mr. Wise, appellant was in the habit of visiting him in his apartment "just about every day."

On October 24, 2000, appellant entered his apartment in a normal manner—then walked to one of the rear rooms in the apartment and began talking to one of his children. Shortly after appellant entered the apartment, a police officer knocked at the door. Mr. Wise answered, and the officer inquired if "somebody [had run] into the building." Mr. Wise replied, "Nobody ran in here." The officers gave the areas immediately inside the doorway of the apartment a cursory look and left.

### C. *The Decision of the Motions Judge*

In her opinion, the motions judge said, in relevant part:

At the time—on October 24, [Officer Webb] did not actually know that the defendant was barred, but he had certain information about people smoking and selling CDS, and we have the fact that the defendant ran.

I disagree with you about the fact that presence means that it actually has to be on that day. Only Officer Webb is an eyewitness to this. So he is the only one who saw a misdemeanor maybe being committed—probable cause to believe it had been committed in his mind.

No other officer could have arrested [defendant on] November 6 without a warrant, but since it was Officer Webb, it was he who believed he saw a misdemeanor being committed in his presence.

So therefore on November 6, when he did actually see the defendant, I believe that he was authorized to arrest him for trespassing. Now, if it had been another officer, I would agree with the defense that a warrant was necessary but not under these facts or situation, and the fact that maybe he wasn't trespassing, that is neither here nor there because we are just dealing with the very low standard of probable cause, is it more like[ly] than not?

I will say if Mr. Wise had just said that the defendant was in the apartment, maybe it could have all been cleared up because he had permission to be there.

## III. DISCUSSION

■ Preliminarily, we shall assume, *arguendo,* that Officer Webb, on October 24, 2000, had probable cause to arrest appellant for trespassing at 125 Lee Avenue.[6] With that assumption, the question becomes whether Officer Webb, if he chose to make a warrantless arrest, was required to make the arrest promptly after he had probable cause to believe that a misdemeanor had been committed in his presence. Aside from Maryland authority, discussed *infra,* the overwhelming weight of authority supports the proposition that a warrantless misdemeanor arrest "must be made promptly, that is, at the time of the offense or as soon thereafter as circumstances permit...." Wayne R. LaFave, Jerold H. Israel & Nancy J. King, *Criminal Procedure* § 3.5(a), at 155 (2d ed.1999); *see also One 1992 Toyota 4–Runner v. State,* 721 So.2d 609, 615 (Miss.1998) ("[A]n arrest for a misdemeanor committed in the arresting officer's presence must be made as quickly as circumstances permit."); *Commonwealth v. Howe,* 405 Mass. 332, 540 N.E.2d 677, 678 (1989) (noting that, at common law, a

---

**6.** Article 27, section 577 of the Maryland Annotated Code (1996 Repl. Vol.) was in effect on October 24, 2000. It provided:

**Wanton trespass upon private land or vessel; legislation by Baltimore City prohibiting denial of accommodations, etc., by public places.**

(a) *In general.*—(1) Any person who remains upon, enters upon or crosses over the land, premises or private property, including boarding any boat or other marine vessel, of any person or persons in this State *after having been duly notified by the owner or his agent not to do so is considered guilty of a misdemeanor,* and on conviction is subject to a fine not exceeding $500, or imprisonment not exceeding 3 months, or both.

(2) The provisions of paragraph (1) of this subsection shall apply to property used as a housing project and operated by a housing authority or by another State public body, as those terms are defined under Article 44A of the Code, if a duly authorized agent of the housing authority or other State public body gives the required notification specified in paragraph (1) of this subsection.

(3) This section may not be construed to include within its provisions the entry upon or crossing over any land when such entry or crossing is done under a bona fide claim of right or ownership of said land, it being the intention of this section only to prohibit any wanton trespass upon the private land of others.

(Emphasis added.)

police officer may arrest without a warrant for a misdemeanor which "is still continuing at the time of the arrest or only interrupted, so that the offence and the arrest form parts of one transaction"); *State v. Warren*, 103 N.M. 472, 709 P.2d 194, 200 (1985) ("It is a general rule that once an officer has the right to arrest without a warrant for a misdemeanor ... committed in his presence he must do so as soon as he reasonably can, and if he delays for purposes disassociated with the arrest or for such a length of time as to necessarily indicate the interposition of other purposes, he cannot arrest without a warrant."); *People v. Hampton*, 164 Cal.App.3d 27, 209 Cal.Rptr. 905, 907 (1985) (a warrantless arrest for misdemeanors "must be made at the time of offense or within a reasonable time thereafter."); *State v. Wozniak*, 94 Idaho 312, 486 P.2d 1025, 1029 (1971) ("An arrest without a warrant for a misdemeanor made within a prompt and reasonable time after the offense is valid."); *Carson v. Pape*, 15 Wis.2d 300, 112 N.W.2d 693, 697 (1961) ("[A]n arrest without a warrant for a misdemeanor must be made promptly, either at the time of the offense, or as soon thereafter as the circumstances reasonably permit."); *Oleson v. Pincock*, 68 Utah 507, 251 P. 23, 26 (1926) ("[I]n order to be valid, the arrest must be made at the time the offense is committed, or within a reasonable time thereafter, or upon fresh and immediate pursuit of the offenders."); *Yates v. State*, 127 Ga. 813, 56 S.E. 1017, 1019 (1907) (A warrantless arrest for a misdemeanor "must have been made at the time of, or within a reasonable time after, the commission of the offense...."); Charles E. Torcia, *Wharton's Criminal Procedure* § 70 (13th ed. 1989) (If the arresting officer "does not act with reasonable promptness, and if the delay was unnecessary, the arrest without a warrant will be unlawful."); 5 Am.Jur.2d *Arrest* § 55 (2001) ("The arrest [for a misdemeanor] must be made at the time the offense, or some part of it, is being committed, or within a prompt and reasonable time after its commission, or upon fresh and immediate pursuit of the offender."); H.D. Warren, Annotation: *Peace Officer's Delay in Making Arrest Without a Warrant for Misdemeanor or Breach of Peace*, 58 A.L.R.2d 1056, 1063

(1958) ("It is a general rule that once an officer has the right to arrest without a warrant for a misdemeanor or breach of the peace committed in his presence he must do so as soon as he reasonably can, and if he delays for purposes disassociated with the arrest or for such a length of time as to necessarily indicate the interposition of other purposes, he cannot arrest without a warrant.").

In the case of *Childress v. State*, 227 Md. 41, 43, 175 A.2d 18 (1961), the Court of Appeals, citing *inter alia*, the annotation last mentioned (*i.e.*, 58 A.L.R.2d 1056), recognized the rule that ordinarily a police officer may make an arrest, without a warrant, for misdemeanors committed in his presence only if the arrest is made within a reasonable time after the commission of the misdemeanor (or supposed misdemeanor). In *Childress*, the appellant, Roy A. Childress, undertook to direct traffic near a busy intersection during rush hour in Baltimore City. 227 Md. at 42–43, 175 A.2d 18. A Baltimore City police officer, who was directing traffic nearby, saw what appellant was doing and was not amused. He walked over "to within five feet of [Childress] and told him he was under arrest." *Id.* at 43, 175 A.2d 18. Childress walked away and entered a nearby house, where he boarded. *Id.* The officer followed Childress into the hallway of the rooming house, "laid a hand on his shoulder and told him he was under arrest." Childress responded by hitting the officer in the nose and knocking him down. *Id.* When two other officers were called to the scene, they, too, were attacked by Childress.

On appeal, Childress contended, *inter alia*, that his arrest was illegal, and therefore, he was justified in resisting arrest. *Id.* at 42, 175 A.2d 18. In holding that the arrest was legal, the *Childress* Court said:

> The arrest occurred when the first officer laid his hand on the appellant's shoulder and told him he was under arrest. *Cornish v. State*, 215 Md. 64, 137 A.2d 170; *Price v. State*, 227 Md. 28, 175 A.2d 11. The arrest was for a misdemeanor committed in the presence of a police officer, and was proper on that score. See cases cited on that point in the *Price* case and Kauffman, *The Law of*

*Arrest in Maryland,* 5 Md. L.Rev. 125, rule 6, p. 160. *The arrest was made almost at once and was therefore made in due time.* See 1 Bishop, *New Criminal Procedure* (Underhill, 2 ed., 1913), § 183(6); 4 Wharton, *Criminal Procedure* (Anderson ed., 1957); § 1615; 4 Am.Jur., *Arrest, § 67; Annotation, 58 A.L.R.2d 1056;* A.L.I. *Code of Criminal Procedure,* § 21(a) and comment thereon (at p. 234). Cf. *Gattus v. State,* 204 Md. 589, 699–601, 105 A.2d 661, where this rule was recognized but found inapplicable.

*Id.* at 43, 175 A.2d 18 (emphasis added).[7]

At oral argument in the case *sub judice,* the State contended that Officer Webb, on October 24, 2000, had an "articulable suspicion" that appellant was guilty of trespass and therefore had authority to make a *Terry* stop. *See Terry v. Ohio,* 392

---

**7.** Although the State fails to cite any authority in support of its position that there is no "reasonable promptness" requirement when a misdemeanor arrest is made without a warrant, our research has found that there are a scattering of cases that would support the State's position. *See Jordan v. Shea,* 46 Mich.App. 443, 208 N.W.2d 235, 238 (1973) ("We find no time limit ... as to when [a warrantless] arrest [for a misdemeanor] must be made."). *See also Dailey v. United States,* 261 F.2d 870 (5th Cir.1958), interpreting a statute that allowed certain federal agents to "make arrests without warrant for violations of *any* law of the United States relating to narcotic drugs ... or marihuana ... where the violation is committed in the presence of the person making the arrest, or where such person has reasonable grounds to believe that the person to be arrested has committed or is committing such violation." *Id.* at 872 (emphasis added). The *Dailey* Court held that

[t]here is nothing in the statute requiring that an arrest be made immediately following the arresting officer's knowledge of probable cause for arrest. If an arresting officer has reasonable grounds to believe that a person has violated the narcotics laws, he may defer the arrest for a day, a week, two weeks, or perhaps longer.

*Id.; see also United States v. Davis,* 281 F.2d 93, 97 (7th Cir.1960) (Under a statute which allowed narcotics agents to "make arrests without warrant for violations ... if committed in the presence of the person making the arrest, or where such person had reasonable grounds to believe that the person arrested was committing [a narcotics] violation, there is no requirement that the arrest be made immediately following the arresting officer's learning of the probable cause"; thus, a delay of about eight days did not constitute an illegal arrest).

U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (Police may stop and briefly detain a person for purposes of investigation if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot.). Whether Officer Webb could have made a *Terry* stop on October 24, 2000, is beside the point. As far as is shown by the record, Officer Webb never shouted for appellant to stop or otherwise tried to alert him to the fact that he wished to "briefly detain" him for purposes of investigation. In any event, he never made such a stop. And, at the time he actually detained appellant, Officer Webb had no reason to believe "that criminal activity was afoot."

■ The requirement of reasonable promptness in effectuating a warrantless misdemeanor arrest "is designed to prevent too great an inroad on the rule requiring a warrant of arrest...." Charles E. Torcia, *Wharton's Criminal Procedure* § 70 (13th ed.1989). As the Supreme Court said in *Trupiano v. United States,* "[w]arrants of arrest are designed to meet the dangers of unlimited and unreasonable arrests of persons who are not at the moment committing any crime," 334 U.S. 699, 705, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948); *see also* Wayne R. LaFave, *Search and Seizure* § 5.1(b) (3d ed.1996). The reason for requiring a warrant holds especially true in cases of misdemeanors where, because of the relative lack of severity of the offense, "greater ... formality [should be] prescribed for the exercise of the power to deprive the citizen of his liberty." *Yancey v. Fidelity & Casualty Co. of New York,* 96 Ga.App. 476, 100 S.E.2d 653, 656 (1957).

The "reasonable promptness" requirement was found not to have been met when an officer waited two hours after the misdemeanor to make a misdemeanor arrest in *Collette v. Director of Revenue,* 717 S.W.2d 551 (Mo.Ct.App.1986). *See also State v. Warren, supra,* 103 N.M. 472, 709 P.2d 194 (1985) (delay of two to three hours in making arrest rendered arrest invalid); *Jackson v. Superior Court,* 98 Cal.App.2d 183, 219 P.2d 879 (1950) (misdemeanor arrest made 28 hours after offense invalid due to delay).

■ Aside from *Childress, supra,* no Maryland appellate case has addressed the question of when a warrantless arrest for a misdemeanor committed in the officer's presence or view must be made. But, the concept has been discussed when applying the common law doctrine of fresh pursuit. Under the fresh pursuit doctrine a police officer may arrest a suspect, outside of the officer's jurisdiction, "for misdemeanors committed in his presence *within a reasonable time thereafter."* *Glover v. State,* 88 Md.App. 393, 400–01, 594 A.2d 1224 (1991) (citing *Gattus v. State,* 204 Md. 589, 600–01, 105 A.2d 661 (1954)) (emphasis in original).

In *Gattus v. State,* 204 Md. 589, 600–01, 105 A.2d 661 (1954), the Court said:

> There is another common law doctrine of fresh pursuit whereby a peace officer may arrest, without a warrant, for misdemeanors committed in his presence *within a reasonable time thereafter.* The fresh pursuit affects only the reasonableness of the lapse of time between the commission of the offense and the arrest therefor. See 6 C.J.S., pp. 590, 591.

(Emphasis added.)

In *Gattus,* the Court held the aforementioned common law rule to be inapplicable because the misdemeanor for which the appellant was arrested was not committed in the arresting officer's presence or view.

In the case at hand, Officer Webb observed the acts that (allegedly) gave him probable cause to believe that a misdemeanor had been committed in his presence thirteen days *before* he arrested appellant. We have found no case that applied the reasonable promptness rule which found a warrantless misdemeanor arrest valid where the delay exceeded one hour.

We hold that Officer Webb did not act with "reasonable promptness" in arresting appellant. Therefore appellant's arrest for trespass was illegal, and the drugs and money seized as a consequence of the arrest should have been suppressed.

■ Even if Maryland did not apply the reasonable promptness rules, appellant's arrest would still have been illegal. At the time Officer Webb chased after appellant—and for the thirteen days that followed—the officer did not know whether appellant had ever been banned from entry onto the 125 Lee Avenue premises. Under such circumstances, a warrant would not have issued because Officer Webb never checked to see whether, in fact, appellant had been prohibited from entering the premises. The mere fact that Officer Webb knew that appellant had been banned from "several locations on Lee Avenue" plainly would not give him probable cause to believe that he had been banned from *all* "locations" on that avenue. The officer had, at best, a "hunch" that appellant might be trespassing-not probable cause to believe that he was, in fact, trespassing.

**JUDGMENT REVERSED; COSTS TO BE PAID BY MONTGOMERY COUNTY, MARYLAND.**