3 A.3d 465

Emmanuel L. JONES

v.

STATE of Maryland.

No. 918, Sept. Term, 2008.

Court of Special Appeals of Maryland.

Sept. 1, 2010.

114

Lyndon P. Dreven of Washington D.C. (Nancy S. Forster, Public Defender, Howrey, LLP, on the brief), for the appellant.

Douglas D. Guidorizzi (Douglas F. Gansler, Atty. Gen., on the brief) Baltimore, MD, for appellee.

Panel: HOLLANDER, WOODWARD and ZARNOCH, JJ.

WOODWARD, J.

On November 23, 2007, appellant, Emmanuel L. Jones, was arrested in front of 612 Baker Street in Salisbury, Maryland. A search incident to appellant's arrest produced suspected narcotics, a sample of which tested positive for cocaine. Appellant was subsequently charged with, among other things, possession with intent to distribute cocaine and trespass on posted property. Appellant filed a motion to suppress on the ground that his arrest lacked probable cause and thus the evidence seized during the search incident to arrest was the result of an illegal search. On April 11, 2008, the Circuit Court for Wicomico County denied appellant's motion. On June 23, 2008, appellant entered a not guilty plea on an agreed statement of facts, and the State entered a *nolle prosequi* to all counts with the exception of the possession of cocaine. The trial court found appellant guilty of the charge and sentenced him to three years' incarceration. On appeal, appellant presents one question for review, which we have rephrased:

Did the trial court err in denying appellant's motion to suppress on the basis that there was probable cause to arrest appellant for trespassing on posted property?

For the reasons set forth herein, we shall affirm the judgment of the circuit court.

## BACKGROUND

The trial court held a hearing on appellant's motion to suppress on April 11, 2008. Officer David Underwood of the Salisbury Police Department was the only witness to testify for the State. Officer Underwood stated that he and Officer Thomas McMenamy were traveling in a patrol car on Anne Street approaching Baker Street when Officer Underwood observed appellant in the rear yard of 612 Baker Street walking toward Anne Street. Officer Underwood testified that upon seeing the patrol vehicle, appellant "immediately turned around and began walking back towards Baker Street." According to Officer Underwood, appellant "was walking at a much quicker pace than he was when he was walking towards Anne Street." Upon turning the patrol car onto Baker Street, Officer Underwood saw appellant "walking from the rear yard into the side yard and then eventually into the front yard of 612 Baker Street...." Officer Underwood stated that he was familiar with the owners of 612 Baker Street, Glen and Lynn Bratten, and that there were "no trespassing" signs posted on all sides of the property.

Officer Underwood then stopped appellant "in reference to the trespassing violation .... [t]o see if he had a right to be on the property." Upon questioning, Officer Underwood observed that appellant appeared nervous and avoided making eye contact. When Officer Underwood asked whether appellant had anything illegal on his person, appellant emptied the contents of his pockets, with the exception of his front right watch pocket. Officer Underwood testified that, when he asked appellant about that particular pocket, appellant turned away. According to Officer Underwood, "[a]t that time [appellant] was detained."

Officer Underwood then asked appellant where he lived. Appellant "didn't provide that address." Officer Underwood "attempted to make contact with the tenants of 612 Baker Street" by knocking on the door, but no one answered. When asked by the prosecutor whether he knew where appellant

resided, Officer Underwood stated: "To my knowledge, 618 Baker Street."[1]

Officer Underwood next described the physical layout of the homes on Baker Street. He stated that 612 was part of a building containing three rowhouses, 612 was the far right rowhouse as one faced the front, with 614 and 616 to the left, respectively. A driveway separated 616 from 618, the latter being part of a duplex with 620. There was also a driveway between 610 and 612. Officer Underwood testified that he first observed appellant directly behind 612, and then saw appellant come from the back of 612 along the driveway separating 612 and 610 and enter the front yard of 612 where he made contact with appellant.

According to Officer Underwood, appellant was ultimately placed under arrest "[i]n reference to the trespassing." Officer Underwood searched appellant's front right watch pocket and found a series of baggies containing what Officer Underwood "recognized through [his] training, knowledge and experience as suspected crack cocaine." Finally, Officer Underwood testified that the area of Anne Street and Baker Street was "considered an open-air drug market and had a high crime rate."

Appellant called two witnesses. Appellant's mother, Vanessa Robinson, testified that appellant was staying at her home at 618 Baker Street. Robinson stated that an individual named Jane Ann[2] lived at 612 Baker Street and had given appellant permission to enter the front yard of 612 Baker Street to access 618 Baker Street. The other witness to testify for appellant was Michael Booker, who lived at 620 Baker Street. Booker testified that around noon on November 23, 2007, he was with appellant in the yard shared by 618 and 620 Baker Street. Booker went inside of his house and when he came back out, he observed the officers place appel-

---

1. It is unclear from Officer Underwood's testimony when he learned that appellant lived at 618 Baker Street.

2. Robinson did not know Jane Ann's last name.

lant in a patrol car. Booker noted that the police did not make any attempt to speak with him before arresting appellant.

The trial court concluded that the police had probable cause to arrest appellant and denied appellant's motion to suppress. The court stated, in relevant part:

[T]he question really is whether or not based on Officer Underwood's observations that someone—that an objectively reasonable police officer in that situation considering the totality of the circumstances would have found there was reasonable grounds to believe that [appellant] was trespassing at that time.

... [T]here is nothing to suggest that the no trespassing signs which were posted on all sides of the building and from the officer's testimony would have been visible, said no trespassing except for neighbors. It said no trespassing.

And I believe based on Officer Underwood's testimony that, an objectively reasonable officer acting under those circumstances considering the nature of the area, the observations of [appellant] where he was located, his behavior and when asked where he lived, actually there is nothing—I don't recall there being any testimony that he asked [appellant] what permission he had to be there. He asked him where he lived and he said at one point, I think no answer. Then he said at another time that it was 618, but I think based on the officer's testimony, I'm going to find that there was probable cause for the arrest, and the arguments made can perhaps more effectively be made at trial.

On June 23, 2008, appellant made an oral motion to reconsider the denial of his motion to suppress, which was denied. Appellant then entered a not guilty plea to an agreed statement of facts on the sole charge of possession of cocaine, the remaining counts having been *nolle prossed* by the State. As previously stated, the trial court found appellant guilty and sentenced him to three years' incarceration with the Division of Correction. A timely notice of appeal followed.

## DISCUSSION

### The Parties' Contentions

Appellant argues that the trial court erroneously concluded that Officer Underwood had probable cause to arrest him for trespass on posted property. Relying on *In re Jason Allen D.*, 127 Md.App. 456, 733 A.2d 351 (1999), *Johnson v. State*, 356 Md. 498, 740 A.2d 615 (1999), and *Torres v. State*, 147 Md.App. 83, 807 A.2d 780 (2002), appellant claims that, "[i]n order to find probable cause for trespassing, the court must find that the officers knew that appellant was prohibited from entering the property of 612 Baker Street." Appellant focuses on the three factors cited by the trial court to support its finding of probable cause, namely, "1) appellant's physical location; 2) the nature of the area; and 3) appellant's behavior when asked for his address."

Regarding appellant's presence at 612 Baker Street, appellant asserts that, even with the posted "No Trespassing" signs, "[b]eing present on a neighbor's property does not create probable cause for trespassing, without confirmation that the presence is forbidden." According to appellant, the mere presence in a high crime area also cannot justify a finding of probable cause, because "[p]robable cause cannot be found in this case, where the crime is distinct from the one that defines the area." Finally, appellant contends that probable cause cannot be based on appellant's "behavior when asked where he lived," because (1) appellant was not asked where he lived until after he was arrested, and thus "the question of whether probable cause had been established [was] moot;" and (2) under Maryland law, appellant's nervousness upon being stopped by Officer Underwood cannot be the basis for a finding of probable cause.

Appellant next argues that, even when all pertinent facts are considered, including those not relied upon by the trial court, "the officers failed to develop probable cause to believe that appellant was trespassing on the property of 612 Baker Street." Again, appellant claims that "the officers would need to confirm that [appellant] was not permitted on the property

in order to establish probable cause." Among the reasons that appellant claims the officers failed to do so was that "there is no evidence that the officers ever asked appellant if he had permission to be on the property."

Finally, appellant focuses on what the officers did know based upon their "cursory investigation," namely "knowledge of the owners of 612 Baker Street," "observation of a 'No Trespassing' sign," and "a knock on the door of 612 Baker Street that went unanswered." None of these facts, according to appellant, establishes probable cause. Appellant concludes that, "[b]ecause Officer Underwood did not have probable cause to arrest appellant for trespass, the arrest [was] unlawful and the fruits of [the] subsequent search [were] inadmissible."

The State responds that the trial court did not err in denying appellant's motion to suppress, because the police had probable cause to arrest appellant for trespassing on posted property. Specifically, the State claims that appellant's arrest was properly supported by probable cause based on the following facts: (1) the property was "posted conspicuously against trespass;" (2) appellant was observed on the rear, side, and front of the property where the signs were posted; (3) the area was known as an open-air drug market; (4) appellant "acted furtively upon seeing [the] police officer[s];" (5) appellant did not live at the property; (6) appellant failed to make eye contact with Officer Underwood and never claimed to have permission to be on the property at 612 Baker Street; and (7) Officer Underwood attempted unsuccessfully to contact the residents of 612 Baker Street.

The State further contends that in Maryland, the crime of trespass on posted property is to be distinguished from the crime of wanton trespass on private property. According to the State, "[t]respass on posted property simply prohibits entry on property that is posted conspicuously against trespass," while wanton trespass on private property "requires that the individual specifically be notified by the owner, or

owner's agent, not to enter the property." The State asserts that appellant's contention that probable cause requires the officers to know whether appellant was prohibited from entering 612 Baker Street is based on cases interpreting the wanton trespass statute, not the trespass on posted property statute. The State claims that the Court of Appeals has never suggested that posted no trespassing signs with knowledge that a person does not reside in a residence did not create probable cause for trespass on posted property. Finally, the State argues that, even if appellant had permission to be present at 612 Baker Street, probable cause would not be negated, because the "burden is on the defendant to generate that defense at trial." Therefore, the State concludes that the trial court properly denied appellant's motion to suppress.

## Statutory Trespass Law in Maryland

Under common law, a trespass to real property had to constitute a breach of the peace for criminal liability to attach. *In re Antoine M.*, 394 Md. 491, 503, 907 A.2d 158 (2006). Thus, to criminalize trespass without a breach of the peace required legislative action. *See Johnson v. State*, 356 Md. 498, 506, 740 A.2d 615 (1999) (stating that, "for the most part, criminal trespass is a creature of statute").

In 1900, the General Assembly enacted the first criminal trespass statute, which we shall refer to as the "wanton trespass" statute. 1900 Md. Laws ch. 66. It stated in relevant part:

Any person or persons who shall enter upon or cross over the land, premises or private property of any person or persons in this State **after having been duly notified by the owner or his agent not to do so,** shall be deemed guilty of a misdemeanor ... and provided, further, **that nothing in this Act shall be construed to include** within its provision **the entry upon or crossing over any land where such entry or crossing is done under a bona fide claim of right or ownership of said land,** it being the

intention of this Act only to prohibit wilfull and wanton trespass upon the private land of others.

*Id.* at 66–67 (emphasis added).

In 1920, a statute criminalizing trespass on posted property was enacted, which we shall call "trespass on posted property." 1920 Md. Laws ch. 112. This statute provided:

[I]t shall be unlawful for any person to enter or trespass on any property which is posted against trespassers in a conspicuous manner. Any person so doing shall be guilty of a misdemeanor and upon conviction before any Justice of the Peace shall pay a fine of fifteen dollars ($15.00) and the costs; the prosecution of such offenders shall be made and proceedings instituted by the landowner or tenant of the property unlawfully entered.

*Id.* at 182.

Unlike the wanton trespass law, the trespass on posted property statute required the premises in question to be "posted against trespassers in a conspicuous manner." 1920 Md. Laws ch. 112, at 182. The trespass on posted property statute also did not necessitate the owner or the owner's agent to notify the trespasser that he or she could not enter the owner's land before criminal liability would attach, nor did it include an exception for invasions done under a *bona fide* claim of right or ownership. Finally, under the terms of the trespass on posted property statute, it was the landowner's responsibility to commence any prosecution.

Before 1998, the trespass on posted property and wanton trespass statutes existed in separate sections of the Maryland Code. *See* Md.Code (1957, 1996 Repl.Vol.), Art. 27 § 576 (trespass on posted property); Md.Code (1957, 1996 Repl. Vol.), Art. 27 § 577 (wanton trespass). For the purpose of revising and consolidating Maryland's trespass laws in 1998, the General Assembly repealed § 576 and § 577, and enacted a new § 577 that placed the two laws into one statutory provision. 1998 Md. Laws ch. 498, at 2361, 2363, 2365 (codified as amended at Md.Code (1957, 1996 Repl.Vol., 1998 Cum.Supp.), Art. 27 § 577(a)(1), (2)). No substantive changes

were made to the laws, except that the legislature eliminated the requirement that a landowner initiate the prosecution for a trespass on posted property. 1998 Md. Laws ch. 498, at 2361–62, 2363 (codified as amended at Md.Code (1957, 1996 Repl. Vol., 1998 Cum.Supp.), Art. 27 § 577(a)(1)). The two laws were separated again upon the creation of the Criminal Law Article of the Maryland Code in 2002. *See* 2002 Md. Laws ch. 26, at 513–14.

Today, the two laws remain codified in separate sections of the Criminal Law Article of the Maryland Code. The current trespass on posted property statute, which was in effect at the time of appellant's arrest, is found at section 6–402(a) of the Criminal Law Article ("C.L."), and states in pertinent part:

> (a) *Prohibited*—A person may not enter or trespass on property that is posted conspicuously against trespass by:
>
> (1) signs placed where they may reasonably be seen

Md.Code (2002), C.L. § 6–402(a)(1). C.L. § 6–403(a) contains the wanton trespass statute, which provides in relevant part:

> (a) *Prohibited—Entering and crossing property.*—A person may not enter or cross over private property . . ., after having been notified by the owner or the owner's agent not to do so, unless entering or crossing under a good faith claim of right or ownership.

In the almost one hundred years that the two criminal trespass laws have coexisted, the fundamental distinctions remain: the wanton trespass statute includes both (1) a requirement that the owner or the owner's agent notify the individual not to traverse upon the owner's land, and (2) an exception that excludes entering or crossing under a good faith claim of right or ownership. Neither provision exists in the trespass on posted property statute.[3] The trespass on posted property law requires that the property be "posted conspicuously against trespass," a provision not present in the wanton trespass statute.

---

**3.** The trespass on posted property statute does not preclude at trial the defenses of ownership, right, or permission.

It is these differences that appellant's argument fails to appreciate. Appellant cites *In re Jason Allen D.*, *Johnson*, and *Torres*, for the proposition that probable cause to arrest an individual for trespassing on posted property requires the police to have knowledge that the alleged trespasser was prohibited from entering the property in question. Appellant's reliance is misguided. We shall explain.

In *In re Jason Allen D.*, we addressed the bona fide claim of right exception to the wanton trespass statute. The appellant was arrested twice in the same day for wanton trespass on public housing property, from which he previously had been prohibited from entering.[4] *In re Jason Allen D.*, 127 Md.App. at 460–61, 733 A.2d 351. Subsequent to the first arrest, law enforcement was dispatched to the same public housing complex because of a report that the appellant was "harassing" the security guards. *Id.* at 462, 733 A.2d 351. Upon returning, an officer observed the appellant standing on the premises with a group of individuals, one of whom was later identified as the appellant's cousin. *Id.* at 462–63, 466, 733 A.2d 351. The officer then arrested the appellant for "trespassing on the Housing Authority's property after being duly notified not to do so." *Id.* at 463, 733 A.2d 351. The trial judge found that the appellant had committed wanton trespass. *Id.* at 471, 733 A.2d 351.

On appeal, the appellant argued that the evidence was insufficient to support his conviction. *Id.* at 472, 733 A.2d 351. According to the appellant, he had a right to be on the property because he was a guest of his cousin at the time of his second arrest. *Id.* In reversing, this Court noted that the wanton trespass statute did not criminalize entries made under a bona fide claim of right. *Id.* at 475, 733 A.2d 351. We observed that the undisputed evidence at trial revealed that the appellant's cousin invited the appellant on the premis-

---

4. We referred to testimony that a no-trespassing sign was posted on one of the buildings in the public housing complex. *In re Jason Allen D.*, 127 Md.App. 456, 460, 733 A.2d 351 (1999). This fact, however, was not a factor in this Court's analysis.

es and that the appellant's cousin was standing with the appellant at the time of the arrest. *Id.* at 479–80, 733 A.2d 351. We concluded that the appellant generated sufficient evidence to show he was on the property under a bona fide claim of right, and that the State failed to rebut this defense beyond a reasonable doubt. *Id.* at 484–85, 733 A.2d 351.

In *Johnson*, the Court of Appeals decided that a two-year ban notice satisfied the notification requirement of the wanton trespass statute. In that case, the police were patrolling a public housing complex and noticed the petitioner driving on a street within the community. *Johnson*, 356 Md. at 502, 740 A.2d 615. The arresting officer recognized the petitioner and radioed dispatch to see whether the petitioner was included on a list "of names of people that have been banned from different Housing Authority properties." *Id.* The arresting officer was informed that the petitioner had received a notice two years ago not to return to the property in question. *Id.* Acting upon this information, the officer stopped the petitioner and arrested him for wanton trespass on public housing property. *Id.* at 500, 502, 740 A.2d 615. A search incident to arrest produced illegal narcotics. *Id.* at 502, 740 A.2d 615. After denying a motion to suppress the evidence, the trial court found the petitioner guilty on an agreed statement of facts of possession with intent to distribute a controlled dangerous substance and simple possession of the same. *Id.* at 500, 502, 740 A.2d 615.

The petitioner challenged his conviction on appeal by arguing that the officer lacked probable cause for the arrest. *Id.* at 502–03, 740 A.2d 615. Under the wanton trespass statute, a trespasser had to be "duly notified by the owner or his agent" not to enter public housing property. *Id.* at 500–01, 740 A.2d 615. The petitioner maintained that the police could not have reasonably believed that the two-year old ban "duly notified" the petitioner that he was prohibited from the premises, and therefore probable cause to arrest could not exist. *Id.* at 503, 740 A.2d 615. The Court of Appeals rejected this argument, holding that it was reasonable for the arresting officer to rely on the two-year old notice as "due notice" that the petitioner

was banned from the public housing complex.[5] *Id.* at 510, 740 A.2d 615. According to the Court, probable cause existed for the petitioner's arrest because "a notification to stay off property given on one occasion remains effective for future occasions." [6] *Id.* at 508, 740 A.2d 615.

In *Torres*, this Court considered whether the arrest of the appellant thirteen days after an officer observed the appellant allegedly committing a wanton trespass was reasonably prompt. *Torres*, 147 Md.App. at 93, 93 n. 6, 807 A.2d 780. Police were dispatched to an apartment building at 125 Lee Avenue where individuals were using and selling controlled dangerous substances in the parking lot.[7] *Id.* at 90, 807 A.2d 780. Upon arriving at the scene, Officer Frank Webb observed the appellant "put 'an unknown object' " in his mouth and run into the rear entrance of the building. *Id.* Officer Webb searched inside the building for the appellant in order "to investigate why [the appellant] was, first of all, trespassing, find out what [the appellant] put in his mouth," but was unable to locate the appellant. *Id.* at 90, 807 A.2d 780. Officer Webb did not know whether the appellant had ever been banned from 125 Lee Avenue, but intended to find out if he caught the appellant. *Id.* at 91, 807 A.2d 780. While on routine patrol thirteen days later, Officer Webb noticed the

---

5. Although the Court noted that there were no trespassing signs on the premises, it included this fact only to emphasize that the postings provided " 'contemporaneous notice' and would warn a reasonable person not to enter if his or her presence was unauthorized, or, as in this case, that [the petitioner] had been banned from the property." *Johnson v. State*, 356 Md. 498, 510, 740 A.2d 615 (1999).

6. In a footnote, the Court advised that it was not deciding whether a ban notice was valid for an indeterminate period of time. 356 Md. at 508 n. 8, 740 A.2d 615. The Court decided only that two years was not unreasonable. *Id.*

7. In the lobby of the apartment building was a "conspicuous blue and white sign," which read "no trespassing or loitering" and "notified readers that the police were authorized to act as agents of the owner." *Torres v. State*, 147 Md.App. 83, 89, 807 A.2d 780 (2002). The appellant, however, was not charged under the trespass on posted property statute, only under the wanton trespass statute.

appellant walking down the street. *Id.* at 91, 807 A.2d 780. The officer arrested the appellant for trespassing, searched his person, and found money and cocaine. *Id.* The trial judge denied a motion to suppress the evidence seized, concluding that the police had probable cause to arrest the appellant. *Id.* at 92, 807 A.2d 780.

At the outset of this Court's analysis, we "assume[d], *arguendo,* that Officer Webb ... had probable cause to arrest [the] appellant for trespassing at 125 Lee Avenue." [8] *Id.* at 93, 807 A.2d 780. With that assumption, we addressed the question of whether Officer Webb was required to make a warrantless arrest "promptly after he had probable cause to believe that a misdemeanor had been committed in his presence." *Id.* We observed that the "overwhelming weight of authority supports the proposition that a warrantless misdemeanor arrest must be made promptly, that is, at the time of the offense or as soon thereafter as circumstances permit." *Id.* (internal quotations omitted). Under the facts of *Torres,* we held that Officer Webb did not act with "reasonable promptness" in arresting the appellant and thus his arrest was illegal and the drugs and money seized incident to the arrest should have been suppressed. *Id.* at 98, 807 A.2d 780.

All of the cases cited above by appellant analyze questions and a statute entirely distinct from the matter *sub judice.* Discussions relating to the good faith exception to the wanton trespass statute in *In re Jason Allen D.,* a two year old ban notice as probable cause for an arrest for wanton trespass in *Johnson,* and the reasonable promptness of a warrantless arrest for wanton trespass in *Torres,* are irrelevant to the issue of whether the police had probable cause to arrest appellant for trespass on posted property and do not provide support for appellant's argument that the police could only

---

**8.** We also noted, by way of dicta, that Officer Webb did not have probable cause to arrest the appellant for trespassing at the time that he chased the appellant into the apartment building, or even during the 13 days that followed, because Officer Webb "did not know whether appellant had ever been banned from entry onto the 125 Lee Avenue premises." *Torres,* 147 Md.App. at 99, 807 A.2d 780.

arrest appellant after first determining that he did not have permission to enter upon 612 Baker Street. Indeed, our research has revealed no Maryland appellate case interpreting the trespass on posted property statute.[9] We shall now discuss the principles of probable cause and apply them to the trespass on posted property statute, C.L. § 6–402(a) and the facts of the instant case.

## The Fourth Amendment, Probable Cause, *Terry*[10] Stop, and Arrest

■ The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the person to be searched and the person or things to be seized.[11]

■ "Generally, seizures of persons require probable cause to arrest...." *Nathan v. State*, 370 Md. 648, 659, 805 A.2d 1086 (2002), *cert. denied*, 537 U.S. 1194, 123 S.Ct. 1303, 154 L.Ed.2d 1029 (2003). Thus, a "police officer who has probable cause to believe that a felony or misdemeanor is being committed in the presence or within the view of the police officer may arrest without a warrant any person whom the police officer reasonably believes to have committed the crime." Md.Code (2001, 2008 Repl.Vol.), § 2–202(b) Crim. Proc. Art. "The legality of a warrantless arrest is determined

---

9. The trespass on posted property statute has been quoted in two Court of Appeals cases, but with no substantive analysis. *See In re Anthony W.*, 388 Md. 251, 279, 879 A.2d 717 (2005); *State v. Garnett*, 384 Md. 466, 469, 863 A.2d 1007 (2004).

10. 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

11. The protections of the Fourth Amendment are binding on Maryland by incorporation through the Due Process Clause of the Fourteenth Amendment. *Crosby v. State*, 408 Md. 490, 505 n. 17, 970 A.2d 894 (2009).

by the existence of probable cause *at the time of the arrest,"*
*Johnson,* 356 Md. at 504, 740 A.2d 615 (emphasis added), and
"may not be determined with the benefit of hindsight." *Baziz
v. State,* 93 Md.App. 285, 295, 612 A.2d 296 (1992), *cert.
denied,* 329 Md. 110, 617 A.2d 1056 (1993).

 "The rule of probable cause is a non-technical con-
ception of a reasonable ground for belief of guilt, requiring
less evidence for such belief than would justify conviction but
more evidence than that which would arouse a mere suspi-
cion." *Johnson,* 356 Md. at 504, 740 A.2d 615 (internal
quotations omitted). The Supreme Court has recognized the
difficulty of distilling the principles of probable cause into a
rigid formula:

> [T]he probable-cause standard is a practical, nontechnical
> conception that deals with the factual and practical consider-
> ations of everyday life on which reasonable and prudent
> men, not legal technicians, act. Probable cause is a fluid
> concept—turning on the assessment of probabilities in par-
> ticular factual contexts—not readily, or even usefully, re-
> duced to a neat set of legal rules.
>
> The probable-cause standard is incapable of precise defi-
> nition or quantification into percentages because it deals
> with probabilities and depends on the totality of the circum-
> stances. **We have stated, however, that the substance of
> all the definitions of probable cause is a reasonable
> ground for belief of guilt, and that the belief of guilt
> must be particularized with respect to the person to be
> searched or seized.**

*Maryland v. Pringle,* 540 U.S. 366, 371, 124 S.Ct. 795, 157
L.Ed.2d 769 (2003) (citations, alterations, and internal quota-
tions omitted) (emphasis added). Probable cause exists where
the facts and circumstances within the officer's knowledge and
of which he or she had reasonably trustworthy information
would justify the belief of a reasonable person that a crime has
been or is being committed. *See Beck v. Ohio,* 379 U.S. 89, 91,
85 S.Ct. 223, 13 L.Ed.2d 142 (1964); *Collins v. State,* 322 Md.
675, 680, 589 A.2d 479 (1991).

 Probable cause, however, is not necessary to conduct a brief investigative stop, commonly known as a *Terry* stop, because it is less invasive than a formal custodial arrest:

*Terry v. Ohio*, 392 U.S. 1 [88 S.Ct. 1868, 20 L.Ed.2d 889] (1968), and its progeny created a limited exception to the probable cause requirement for investigative detentions, because the balance between the public interest and the individual's right to personal security tilts in favor of a standard less than probable cause in those cases. Under *Terry*, certain seizures are justifiable under the Fourth Amendment if there is a reasonable and articulable suspicion that the person is involved in criminal activity. **For Fourth Amendment purposes, a police officer who has reasonable suspicion that a particular person has committed, is committing, or is about to commit a crime may detain that person briefly in order to investigate the circumstances that provoked suspicion.**

*Nathan*, 370 Md. at 660, 805 A.2d 1086 (2002) (internal quotations and citations omitted).

 The Court of Appeals has discussed the permitted scope of a *Terry* stop:

**A *Terry* stop allows police to investigate the circumstances that provoke suspicion. They do this by asking the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions.** The detainee is not obligated to respond, however, and, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released.

*Collins v. State*, 376 Md. 359, 368, 829 A.2d 992 (2003) (emphasis added) (internal quotations and citations omitted); *accord Nathan*, 370 Md. at 660, 805 A.2d 1086 ("Reasonable suspicion of criminal activity warrants a temporary seizure for questioning *limited to the purpose of the stop.*" (Emphasis added)). Information gleaned by a police officer during a *Terry* stop may generate probable cause that allows for a full custodial arrest, and a search incident to the arrest. *Crosby v. State*,

408 Md. 490, 506, 970 A.2d 894 (2009). Yet, "[t]he discovery of facts, subsequent to the stop, cannot overcome a stop that started out without enough to justify a detention." *Lawson v. State*, 120 Md.App. 610, 618, 707 A.2d 947 (1998).

## Standard of Review

The Court of Appeals recently restated the standard of review applicable to a trial court's grant or denial of a motion to suppress evidence:

> "In reviewing a circuit court's grant or denial of a motion to suppress evidence, we ordinarily consider only the evidence contained in the record of the suppression hearing. The factual findings of the suppression court and its conclusions regarding the credibility of testimony are accepted unless clearly erroneous. We review the evidence and the inferences that may be reasonably drawn in the light most favorable to the prevailing party. We undertake our own constitutional appraisal of the record by reviewing the law and applying it to the facts of the present case."

*McFarlin v. State*, 409 Md. 391, 403, 975 A.2d 862 (2009) (quoting *Rush v. State*, 403 Md. 68, 82, 939 A.2d 689 (2008)).

▇▇▇▇▇ Therefore, "[i]n reviewing the trial court's denial of a motion to suppress, we review the evidence in the light most favorable to the State." *Wilson v. State*, 409 Md. 415, 425, 975 A.2d 877 (2009). The determination of whether an arrest was supported by probable cause, however, is a legal conclusion that appellate courts review *de novo*. *Longshore v. State*, 399 Md. 486, 499, 924 A.2d 1129 (2007).

## Probable Cause for Appellant's Arrest

▇▇▇ As previously stated, trespass on posted property prohibits a person from entering or trespassing on property that is "posted conspicuously against trespass by: (1) signs placed where they may reasonably be seen...." C.L. § 6–402(a). In the case *sub judice*, Officer Underwood testified that, as he and Officer McMenamy were traveling down Anne Street towards Baker Street, he observed appellant in the

rear yard of 612 Baker Street walking towards the officers. When appellant noticed Officer Underwood's patrol car, "he immediately turned around and began walking back towards Baker Street . . . . at a much quicker pace than he was when he was walking towards Anne Street." Officer Underwood saw appellant walk from the rear yard into the side yard and then into the front yard of 612 Baker Street. Officer Underwood also saw "no trespassing" signs posted on all sides of 612 Baker Street and knew appellant was not an owner of the residence there.

Armed with this knowledge, Officer Underwood encountered appellant:

> [OFFICER UNDERWOOD]: At that point, stopped [appellant], made contact with him in reference to the violation.
>
> [THE PROSECUTOR]: I'm sorry. What was the last thing you said?
>
> You stopped him, made contact and—
>
> [OFFICER UNDERWOOD]: **In reference to the trespassing violation.**
>
> [THE PROSECUTOR]: Oh, okay.
>
> [OFFICER UNDERWOOD]: **To see if he had a right to be on the property.**

(Emphasis added).

At this point, we hold that Officer Underwood had reasonable suspicion to believe that appellant was committing a trespass on posted property under C.L. § 6–402(a). *See Terry,* 392 U.S. at 20–21, 88 S.Ct. 1868; *Nathan,* 370 Md. at 660, 805 A.2d 1086. Officer Underwood saw appellant enter onto property that had "no trespassing" signs "conspicuously posted" and knew that appellant was not an owner of that property. Officer Underwood also knew that appellant probably was not going to visit any resident of 612 Baker Street, because appellant was walking away from Baker Street when Officer Underwood first saw him, and then walked back to 612 Baker Street in an apparent attempt to avoid contact with the police. What Officer Underwood did not know was whether appellant lived at 612 Baker Street. Consequently, Officer

Underwood had the legal right "to stop and briefly detain" appellant, *Wilson,* 409 Md. at 440, 975 A.2d 877, in order to investigate the circumstances that provoked the suspicion. *See Nathan,* 370 Md. at 660, 805 A.2d 1086; *Collins,* 376 Md. at 368, 829 A.2d 992.

Officer Underwood proceeded to ask appellant whether "he had anything illegal on his person." Appellant began emptying all of his pockets on the patrol car, with the exception of his front right watch pocket. Officer Underwood observed that appellant was nervous and avoided eye contact. When Officer Underwood inquired about the contents of the right front watch pocket, appellant turned his right side away from Officer Underwood. At that time, in Officer Underwood's words, appellant "was detained."

At this point in the factual chronology, appellant asserts that he was "arrested for trespassing." In other words, appellant claims that Officer Underwood's testimony that appellant "was detained" meant that appellant was arrested. More importantly, appellant contends that he was not asked for his address until after his "detention," *i.e.,* "arrest," and thus appellant's response could not be factored into the determination of whether probable cause had been established. Appellant is mistaken.

First, we note that Officer Underwood used the word "detain," not "arrest," in his testimony. Moreover, after he testified about questioning appellant regarding his address and learning that appellant did not live at 612 Baker Street, Officer Underwood was asked by the prosecutor: "And was [appellant] ultimately placed under arrest?", to which Officer Underwood replied: "That is correct, he was." Second, there simply is no evidence that Officer Underwood made a custodial arrest of appellant at the time that Officer Underwood said that appellant "was detained." Officer Underwood was not asked any questions by either the prosecutor or defense counsel about what he meant by "detaining" appellant or what he did to "detain" appellant. Clearly, during a valid *Terry* stop, a police officer has the right "to stop and briefly detain

an individual." *Wilson*, 409 Md. at 440, 975 A.2d 877. Finally, our standard of review requires that we consider the evidence "and *the inferences that may be reasonably drawn* in the light most favorable to the prevailing party," in this case, the State. *McFarlin*, 409 Md. at 403, 975 A.2d 862 (internal quotations omitted) (emphasis added). Therefore, we infer, from Officer Underwood's testimony that he "detained" appellant, that Officer Underwood's actions were nothing more than a *Terry* stop and had not yet risen to a custodial arrest. Accordingly, Officer Underwood was entitled to conduct a further investigation into appellant's status at 612 Baker Street.

■ Officer Underwood's further investigation was chronicled in the following colloquy with the prosecutor:

[THE PROSECUTOR]: **Did you make any effort to verify whether or not he lived at 612 Baker Street?**

[OFFICER UNDERWOOD]: **Yes. I asked [appellant] where he lived. He didn't provide that address. We attempted to make contact with the tenants of 612 Baker Street with no success.**

[THE PROSECUTOR]: How did you attempt to make contact with them?

[OFFICER UNDERWOOD]: By knocking on the door.

[THE PROSECUTOR]: And no one answered?

[OFFICER UNDERWOOD]: That is correct.

[THE PROSECUTOR]: Do you know where [appellant] resides?

[OFFICER UNDERWOOD]: To my knowledge, 618 Baker Street.

[THE PROSECUTOR]: Where is that in relation to 612 Baker Street?

[OFFICER UNDERWOOD]: 612 is—if you are facing the front, 612 is the far right row house, then you have 614, 616, then you have a driveway, and then you have 618.

■ Officer Underwood's investigation was clearly within the scope of a valid *Terry* stop because his actions were

directed "to obtain information confirming or dispelling [his] suspicions." *Collins*, 376 Md. at 368, 829 A.2d 992 (internal quotations omitted). As previously stated, Officer Underwood knew, prior to the *Terry* stop of appellant, that appellant was not an owner of 612 Baker Street, that 612 Baker Street was "posted conspicuously" with "no trespassing" signs on all sides, and that appellant entered upon 612 Baker Street in the face of those signs. In his investigation, Officer Underwood asked appellant for his address and confirmed his suspicion that appellant did not reside at 612 Baker Street. Officer Underwood also attempted to ascertain whether appellant's entry was authorized by a resident of 612 Baker Street, but no one answered the knock on the door of 612 Baker Street. There was no evidence that appellant ever told Officer Underwood that he had permission to enter onto 612 Baker Street. The results of the *Terry* stop thus "warrant[ed] a prudent person in believing that [appellant] had committed" the misdemeanor crime of trespass on posted property. *Haley*, 398 Md. at 133, 919 A.2d 1200. Accordingly, when Officer Underwood subsequently arrested appellant "[i]n reference to the trespassing," his actions were supported by probable cause.

■■■■■ Appellant's entire argument is based on the premise that probable cause cannot exist unless the police determined that appellant was prohibited from entering 612 Baker Street. This premise is incorrect. As noted above, notification of a person not to enter or cross private property is an element of the wanton trespass statute and is not present in the trespass on posted property statute. *Compare* C.L. § 6–403(a) *with* C.L. § 6–402(a). Moreover, none of the cases relied upon by appellant interpret the trespass on posted property statute; they involve only the wanton trespass statute. *See In re Jason Allen D., Johnson,* and *Torres*. Thus we conclude that there was no need for the police to confirm that appellant was banned from entering 612 Baker Street in order to have probable cause to arrest appellant for trespassing on posted property.

In addition, the fact that appellant may well have had permission to enter onto 612 Baker Street does not negate Officer Underwood's probable cause to arrest appellant for trespass on posted property. As previously mentioned, the exception for a good faith claim of right to enter or cross private property appears only in the wanton trespass statute, not in the trespass on posted property statute. *Compare* C.L. § 6–403(a) *with* C.L. § 6–402(a). Consequently, although a police officer may ask a suspect about any right or permission to be on the subject property, there is no requirement to do so in order to establish probable cause for arrest for trespass on posted property.[12] As the trial court correctly pointed out in its ruling, a claim of right or permission to enter onto private property posted against trespassing is, at most, a defense to be raised at trial. *Cf. In re Jason Allen D.,* 127 Md.App. at 484, 733 A.2d 351.

Therefore, when examining the facts adduced from Officer Underwood's testimony and the inferences that could be reasonably drawn from them in the light most favorable to the State, we conclude that the trial court properly determined that there was probable cause to arrest appellant for trespassing on posted property.

**JUDGMENT OF THE CIRCUIT COURT FOR WICOMICO COUNTY AFFIRMED; APPELLANT TO PAY COSTS.**

---

12. We are not suggesting that, if credible information is learned by a police officer indicating a suspect's right or permission to be on posted property, the officer can ignore it and still have probable cause to arrest for trespass on posted property. The purpose of a *Terry* stop is "to obtain information confirming *or dispelling* the officer's suspicions." *Collins v. State,* 376 Md. 359, 368, 829 A.2d 992 (2003) (emphasis added) (internal quotations omitted). If a police officer obtains information that dispels his or her suspicions, the suspect must then be released. *Id.* Here, there was no evidence that appellant ever told the police officers that he had permission to enter onto 612 Baker Street.